CASE 63—ACTION TO ENJOIN THE BOARD OF ALDERMEN OF CITY OF COVINGTON FROM AWARDING A FRANCHISE TO A CERTAIN BUILDER.— Nov. 28.

## Keith v. Johnson & Others.

APPEAL FROM KENTON CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS.. AFFIRMED.

CORPORATIONS—BUSINESS AUTHORIZED BY CHARTER—FRANCHISE FOR TERM EXCEEDING LIFE OF CORPORATION—MUNICIPAL CORPORATIONS —AWARDING FRANCHISE TO HIGHEST AND BEST BIDDER—INJUNCTION.

Held:   1. Though the charter of a gas company states that the business and operations of the company shall consist in furnishing a certain city with gaslight in pursuance of and according to the terms of a certain ordinance of the city, the company may acquire a new franchise for supplying the city with gas, there being no intention to designate the carrying out of the existing contract as the sole business for which the corporation was organized.

2. A corporation may receive a grant of a franchise for a term of years extending beyond the life of the corporation.

3. A city council may be enjoined from awarding a franchise to one who is not "the highest and best bidder," in violation of

the Constitution, section 164, the act being a ministerial one. But the injunction will not be granted unless there is about to be a plain and palpable violation of the Constitution, and in determining whether the injunction should be granted, force will be given to both the controlling words "highest" and "best."

C. J. & W. W. HELM, W. S. PRYOR AND W. McD. SHAW, ATTORNEYS FOR APPELLANT.

(Original brief not in record.)

J. W. BRYAN, FOR APPELLEE JOHNSON AND THE COVINGTON GAS LIGHT COMPANY.

The contract for laying pipes, &c., and lighting the city of Covington with gas being about to expire, the general council, in November, 1899, directed the city clerk to advertise for sealed bids for the franchise of entering in and upon the street of said city to lay and maintain pipes for conveying and supplying gas to consumers in and out of said city for a term of twenty years, from the granting of the franchise. Due advertisement was had and three bids were filed with the clerk—one by the Covington Gas. Light Co., one by R. W. Nelson and Frank P. Helm and associates, and one by A. K. Detwiler and associates.

No final action had been taken by the general council on these bids, when appellant, on May 10, 1900, instituted this action on the equity docket of the Kenton Circuit Court against John-. son and others who compose the Board of Aldermen of said city to enjoin and restrain them from accepting the bid of the Covington Gas Light Co., which it was averred they were about to do, and alleging that A. K. Detwiler's bid was the highest and best bid for said franchise. Upon final hearing in said court the petition of plaintiff was dismissed and from this judgment the plaintiff, Keith, appeals.

Appellant assailed the bid of the Covington Gas Light Co. upon three grounds:

1. It is beyond the power of that company to bid for or receive the franchise; and for the city to award the franchise to it would be *ultra vires.*

2. The gas company had not accepted the provisions of the present Constitution of Kentucky, and it can not therefore have the benefit of the legislature in awarding such franchise.

3. The bid of A. K. Detwiler for the franchise is the "highest and best," and necessarily therefore the bid of the Covington Gas Light Company is not the "highest and best."

We insist that upon the third ground the appellant is calling on the courts to perform the functions imposed by the law upon the legislature of the city of Covington. This is purely a question of fact to be determined by the city council and can not be interfered with by the courts, unless the ordinance is passed under such circumstances as would indicate fraud or corruption.

### AUTHORITIES CITED.

Practice as to Injunctions—Appeals. Pendergast v. Heekin, 94 Ky., 386; Elizabethtown, &c., R. R. Co. v. Ashland, &c., 94 Ky., 480; Smith v. Telegraph Co., 80 Ky., 270; K. & I. Bridge Co. v. Kruger, 91 Ky., 625; Session Acts 1894, page 200; Section 747, Civil Code of Practice; King v. Tilford, 18 L. R., 978; Davis v. Connolly, 20 L. R., 411.

Powers and Duties of General Council. Constitution of Kentucky, sec. 164; Kentucky Statutes, sec. 3058, subsec. 6; 3068.

*Ultra Vires..* Detroit St. Ry. Co. v. Detroit, 64 Fed. Rep., 628; 2 Kent. Comm., side pages 281, 282; Mor. Priv. Corp., secs. 330-1031; Nicoll v. Railroad Co., 12 N. Y., 121; State v. Rives, 5 Ired., 305, 309; People v. O'Brien, 111 N. Y., 121; Omaha Bridge Cases, 51 Fed. Rep., 309; Roberts v. City of Louisville, 92 Ky., 95.

Non-acceptance of the Present Constitution. Constitution of Kentucky, sec. 190; Kentucky Statutes, sec. 570; Act of Kentucky Legislature of March 2, 1850; City of Newport v. Duber, 84 Ky., 76; N. & C. Bridge Co. v. Gill, 21 L. R., 942; vol. 48, No. 6 of the Lawyers' Reports Annotated, at page 819, the case of the State of Wisconsin, ex rel., David S. Rose, et als., v. Superior Court of Milwaukee County, &c.

W. S. PRYOR, SHAW & HELM FILED SUPPLEMENTAL BRIEF NOVEMBER 23, 1900.

1. We admit it is the province of the city council to reject any or all the bids made, but when it proposes to accept a bid it must pursue the mandatory clause of the Constitution, section 164, and has no such discretion as would confer upon it the right to give one who is not the highest and best bidder the benefit of the contract.

   What we mean is this: If there are two bids, one of more advantage and saving to the city than the other, it is the highest and best that must be received if either is received.

2. It is alleged in the petition that the Detwiler bid is the highest and best bid, a fact not only admitted by the pleadings to be true, but is, in fact, true; and while the bid of appellee has

not been accepted, it is about to be accepted and for that rea-' son the aid of the chancellor is invoked.

3 Counsel for appellees say we must wait until the wrong is consummated and then seek relief. Such is not the law.

4 If no such power exists with the courts, then this provision of the Constitution is meaningless. It was inserted to prevent an unjust and wrongful disposition of franchise rights, resulting from favoritism and official greed, to the injury of the tax-payer.

5. Whilst the city council is to be the judge of which bid is to be accepted, its judgment is limited by the express mandatory provision of section 164 of the Constitution. Cooley's Con. Lim. 6th ed.), pages 89, 93 and 94.

OPINION OF THE COURT BY JUDGE HAZELRIGG—AFFIRMING.

Section 164 of the Constitution provides, among other things, that before granting a franchise for a term of years a county, city, town, taxing district or other municipality "shall first, after one advertisement, receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids." In obedience to this provision, the city of Covington advertised for bids for the franchise of supplying the city and its inhabitants with fuel and illuminating gas for the term of 20 years. The board of aldermen, composed of the appellee Johnson and others, being about to award the franchise to the Covington Gas Company, one of the bidders therefor, the appellant, a citizen and taxpayer of the city, sought to enjoin the appellees from so doing, in substance, first, because that company had no authority to bid, and a contract with it would be void; and, second, because another bid—that of one Detwiler—was the highest and best bid, as the bidder offered gas at the lowest rate.

Touching the first ground, it is urged that the gas company was incorporated in 1854 for the sole purpose of carrying out a prior grant of the city of Covington to

James Southgate and his associates to supply the city with gas for the term of fifty years from October, 1852; and therefore the company could not acquire a new or different franchise, because it could only transact the business it was expressly incorporated to transact. Const., sec. 192. We think this contention was based on a too narrow construction of the purposes for which the company was incorporated. It is true it is stated in the act of incorporation that the business and operations of the company shall consist in furnishing the city of Covington, etc., with gaslight, in pursuance of and according to the terms of an ordinance passed by the city of Covington October 28, 1852, entitled "An ordinance to provide for lighting with gas the city of Covington, Ky.;" and it is true that such ordinance was the one under which Southgate and his associates were authorized to furnish gas for the term of fifty years. But we regard the reference to the Southgate ordinance as intending merely to fix the terms of the contract upon which the gas was to be furnished by the corporation, rather than as intending to designate the carrying out of that contract as the sole business for which the corporation was organized. Indeed, the very terms of the charter show this; for, confessedly, the Southgate contract terminated in fifty years from October 28, 1852, and yet the company was given the exclusive right to supply gas to the city and its inhabitants (under the terms and conditions provided in the Southgate ordinance) for the term of fifty years from the 1st day of January, 1854. It may be noticed that it is not contended that, because the life of the company is only some four or five years, it could not receive a grant to it of a franchise to last twenty years. It seems to be conceded on the authority of Detroit Citizens' St. Ry. Co.,

v. City of Detroit, 12 C. C. A., 365, (64 Fed. 628), and cases
there cited, that, if otherwise entitled to do so, the com-
pany, although so nearly extinct, might receive the grant
in question. As already indicated, we do not think the
charter of the company defines and limits the purpose of
its creation to the business of supplying gas under the
Southgate ordinance.

With respect to the second ground there is more diffi-
culty. The difficulty, however, is not, as we think, in
ascertaining the meaning of the Constitution, or in de-
fining the power of the courts to enforce the provisions
of that instrument. We believe that it is mandatory on
the municipality to award the franchise "to the highest
and best bidder." When this bidder is found, the man-
date of the Constitution must be followed. The act of
awarding the franchise to such a bidder is a ministerial
one, although involving the exercise of judgment and dis-
cretion. When it is ascertained who is the highest and
best bidder, the problem is solved, and the demands of the
constitutional provision may be enforced by the courts
at the instance of an aggrieved bidder or of a citizen and
taxpayer. We are not speaking now of the mere act of
granting a franchise. That is a legislative act, to be ex-
ercised or not, as the legislative body may determine.
We are referring to the act of conferring the award, if
it is to be conferred at all, on the bidder designated by
the Constitution. If the wrong bidder is about to be
selected, the act of so doing may be prevented in advance,
as any other illegal or wrongful ministerial act may be
prevented. The municipal body is to be treated precisely
as if the duty of making the award were conferred on
the clerk of the council, or the mayor of the city, or other
executive or ministerial officer. Undoubtedly, however,

Keith v. Johnson, et als.

the ascertainment of who is the highest and best bidder is, in the first instance, committed by the Constitution and the statutes to the governing authorities of the municipality; and it would seem clear that except in cases where there was about to be on the part of such authorities a plain and palpable violation of their duty to award the franchise to the highest and best bidder, the courts should not interfere. The ascertainment of this fact is one to be determined as other facts are determined, and force is to be given to both the controlling words "highest" and "best," found in the Constitution. In the present case, in the Detwiler bid, there seems to be one price only to the city for public lighting, and it is sought to be demonstrated that this is the lowest and best bid. In the company's bid for such lighting there are a number of apparently important matters to be considered. When using a five-foot tip and four-foot burner on a moonlight schedule, a certain price is fixed; using same on an all and every night schedule, a certain price; using the Welsbach incandescent gas burner on an all and every night schedule, so much per lamp post per year, etc. The Detwiler bid does not contemplate the use of the Welsbach burner. Again, Detwiler proposes to charge the inhabitants of the city for illuminating gas from the 28th October, 1902, 95 cents per 1,000 cubic feet. The company proposes $1 per 1,000 cubic feet, but the latter puts this price in force at once in lieu of the $1.50 rate now prevailing, and which, under the Detwiler award, would continue to prevail until October, 1902. Again, the question of tearing up the streets, many of them of asphalt and brick, is to be considered in determining what is the best bid. Under an award to Detwiler, this disturbance is inevitable. Under an award to the old company, this is avoided. This

may not be a controlling factor, still it is worth consid-ering. Other considerations are referred to in argument, but need not be noticed in detail. It is sufficient to say that an examination of the averments of the petition and its amendments, on which alone the case was tried, and a comparison of the bids involved, do not convince us that an acceptance of the company's bid by the appellees would be a plain or palpable violation of their duty to award the contract in dispute to the highest and best bidder, as required by the Constitution. The chancellor therefore properly dismissed the petition, and the judgment is affirmed.