CASE 63.—SUIT BY FRANK WOODALL AGAINST THE SOUTH COVINGTON & CINCINNATI STREET RAILWAY COMPANY FOR A MANDATORY IN-JUNCTION REQUIRING IT TO REMOVE ITS TRACKS, POLES, &c FROM A CERTAIN STREET.—February 1, 1910.

## Woodall v. South Cov. & Cin. St. Ry Co.

Appeal from Kenton Circuit Court (Criminal Common Law and Equity Division).

M. L. HARBESON, Judge.

From a judgment sustaining a demurrer to the petition, plaintiff appeals.—Reversed.

Street Railroads—Establishment and Maintenance—Franchises—Constitutional Provisions.—Where a street railroad company having a franchise to operate in a city was granted by the city, through its council, the right to lay its tracks and operate its cars on a street not before used by it, in con-sideration of which it gave up the use of two other streets, and conveyed to the city a piece of land abutting on the streets to which the tracks were moved for the purpose of widening it, this did not amount to the granting of a new franchise to the company which was required to be adver-tised and sold under Const. section 164, requiring cities to award franchises to the highest bidder.

WALKER C. HALL for appellant.

ERNST & CASSATT for appellee.

OPINION OF THE COURT BY JUDGE HOBSON.—Affirm-ing.

Prior to July, 1901, the South Covington & Cin-cinnati Railway Company owned and operated a

street car system in the city of Covington under valid franchises owned by it. The various routes on which the cars were operated all converged at the suspension bridge over which the cars passed to and from Cincinnati. They reached the bridge by tracks which passed over Scott and Greenup streets to Second, and over Second to the bridge. In 1901 the city desired to widen Court avenue, which is a street running directly south from the bridge; and a part of the ground required for the additional widening of the street belonged to the railway company. An arrangement was then made between the city and the street railway company by which the company agreed to take up its tracks on Greenup and Scott streets and to come to the bridge along Park place and then along Court avenue. In other words, the tracks which before ran along Second street were placed along Park place and tracks were laid in Court avenue, and for these two squares Greenup street and Scott street were freed of the cars. The situation is shown on the following plot:

The preamble to the ordinance of the council under which the arrangement was consummated is as follows: "Whereas, the South Covington & Cincinnati Street Railway Company now occupies a portion of Second street, between Scott and Greenup streets, and Greenup street between Second street and Park place, and Scott street between Second street and Park place, and operates thereon a street railway, its tracks on said streets connecting the tracks upon the suspension bridge with the various routes operated by said South Covington & Cincinnati Railway Company; and whereas, the city of Covington has requested that the said street railway company shall change its tracks and the operation of its street railway from said portion of said streets to Court street and Park place, all as more fully set forth herein; and whereas, said city of Covington desires to widen Court street on the east side thereof, between Third streets and Park place, and the said South Covington & Cincinnati Street Railway Company is willing to give to said city a strip of land twelve feet along said side of Court street, between Third street and Park place, from land owned by said South Covington & Cincinnati Street Railway Company; and whereas, in the opinion of the council, the said change of tracks from the streets first above specified to Court street and Park place will be for the benefit of said city and the convenience of its citizens and of the traveling public: Now, therefore, be in enacted by the general council of the city of Covington:" (Here follows grant as above stated.)

The land which the street car company gave up is shaded dark on the plot. The city widened and paved Court avenue. The company removed its tracks from the five blocks it had previously occupied

on Greenup, Second, and Scott streets, placing them
on three blocks on Park place and Court avenue.
The heavy lines on the map represent the location
of the street railway before the change, and the
dotted lines the location of the tracks after the
change. This action was brought by Frank F. Wood-
all, a citizen and taxpaper of Covington on July 24,
1908, against the street railway company asking a
mandatory injunction requiring it to remove its
tracks, poles, wires, etc., from Park place. The city
was not made a party to the action, and the removal
of the car tracks from Court avenue was not sought.
The petition does not show that the plaintiff has
sustained any special damage by reason of the
tracks in Park place. The circuit court sustained
a general demurrer to the petition, and the plaintiff
appeals.

Section 164 of the Constitution is in these words:
"No county, city, town, taxing district or other
municipality shall be authorized or permitted to
grant any franchise or privilege, or make any con-
tract in reference thereto, for a term exceeding
twenty years. Before granting such franchise or
privilege for a term of years, such municipality shall
first, after due advertisement, receive bids therefor
publicly, and award the same to the highest and best
bidder; but it shall have the right to reject any
or all bids. This section shall not apply to a trunk
railway."

The plaintiff insists that the ordinance above re-
ferred to grants a franchise to the street railway
company, and that the council was without authority
to do this without advertisement, and letting it to
the highest and best bidder. He also insists that as
a taxpayer of the city he may maintain an action

to have the street car tracks and wires removed
from Park place. When the ordinance was passed
the street railway company had a franchise to op-
erate its cars in the city of Covington. They then
had the right to use for this purpose Scott, Greenup,
and Second streets, as their tracks were then laid.
The purpose of the arrangement between the city
and the street railway company was not to grant an
additional franchise but simply to relocate the tracks
of the street car company so as to be better for the
city and better for the traveling public. The city
secured the widening of Court street and the freeing
for two squares of Greenup and Scott streets, and
the street railway company secured a better ap-
proach to the bridge. It gave up its rights in Green-
up and Scott streets, and also surrendered to the
city the piece of land which it owned. The city has
taken possession of the land and enjoys all the fruits
of the contract. This is not such a franchise as could
be advertised and sold to the highest and best bid-
der; for no one would want a street railway fran-
chise running two squares on Court street and one
square on Park avenue. The purpose of the council
was to get the tracks removed from Greenup and
Scott streets, and to get the strip of ground so that
Court street could be widened. This could not have
been gotten from any bidder at a public sale. It
could only be gotten by a contract with the street
railway company. The title to the streets is in
the city. The city has charge of its streets.
It has authority to open, widen, and straighten,
change, or otherwise improve its streets. Ky. St.
section 3094. Under this power before the adoption
of the Constitution, clearly the city had authority to
straighten a street by selling a part of it to an

abutting landowner, and getting from him other land,
or to make any other trade by which the street would
be made more uniform not preventing its free use by
the public.  28 Cyc. 624.  The city here was con-
fronted with a condition which the interest of the
city and the traveling public demanded should be
changed.  By the agreement made with the street
railway company the location of the tracks was sim-
ply shifted from one position to another to advance
the interest of the city.  No franchise was granted;
nothing was added to the powers of the street railway
company.  Only the route along which the cars should
run was slightly altered.

Section 164 of the Constitution was not intended
to take away from the municipalities of the  state
power to make changes like this required by the in-
creased population of the city or altered conditions.
It was a mere modification in a detail of the execu-
tion of an existing franchise analogous to the re-
moval of tracks from one side of a street to another.
Section 164 of the Constitution relates to the grant-
ing of franchises.  It was not intended to tie the
hands of the city authorities as to the mere details
of executing a franchise already granted.  Both par-
ties here acted in perfect good faith.  There was no
purpose to grant any new franchise to the street
railway company.  The only purpose was to adjust
an old franchise to the present needs.  Of course,
section 164 of the Constitution must not be evaded. If
it was made to appear that an arrangement like this
had been made in evasion of the constitutional pro-
vision, or to accomplish by indirection the granting
of a franchise, we should look through the mere form
at the substance, and declare the transaction void;
but, where nothing of this sort appears,  the  city

council may obtain by contract a modification of existing franchises in the mere details of their execution when the interest of the city so requires. In such cases the validity of the transaction will depend on whether the real purpose of the parties was to grant a franchise or simply to obtain a modification in the exercise of an existing franchise. We think that the latter is clearly the case here. The tracks could not have been put on Court avenue and Park place before these streets were opened and widened. If the city had acquired only a strip of ground along the route now occupied by the street railway tracks and had by contract with the company had it to move its tracks to this strip, and thus relieve Greenup and Scott streets, by no sort of reasoning could it be maintained that this was the granting of a new or additional franchise to the street railway company. And, when instead of acquiring merely a strip, the city opened and widened the streets and thus brought about the same result, the real nature of the transaction was in substance the same.

Judgment affirmed.

CARROLL, J. (dissenting). I consider the question involved in this case of sufficient importance to justify me in stating the reasons why I do not concur in the opinon handed down by a majority of the court. I rest my dissent upon the following grounds:

(1) When a city or other municipality gives to a public service corporation, except a trunk railway, the right to permanently use and occupy a street, highway, or other public place, it is the granting of a franchise or privilege within the meaning of section 164 of the Constitution, reading: "No county, city,

town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids. This section shall not apply to a trunk railway.''

(2)   It is wholly immaterial whether the franchise or privilege is of much or little value to the corporation, or whether the use and occupation under it extends over a small or a large portion of the street, highway, or public place, or whether the city or other municipality or its people suffer injury, loss, or disadvantage or derive benefit or gain from the granting of the franchise or privilege.

(3)   When a franchise is granted to use and occupy a particular street, highway, or place, the grantee cannot under this grant use or occupy any other street, highway, or place in the city or municipality without first obtaining the right so to do in the manner provided in the Constitution.

(4)   If a city or other municipality undertakes to grant a franchise or privilege except in the manner pointed out in the section of the Constitution mentioned, its action is void, and the corporation using and occupying the street, highway, or public place is a trespasser, and any citizen and taxpayer of the city or municipality has the right to directly bring an action to oust the trespasser from its unlawful use and occupancy.

(5)   This constitutional provision is mandatory, and its provisions cannot be evaded or disregarded in any material particular.

These propositions have been sustained by this court in many cases. Thus in Nicholasville Water Co. v. Board of Councilmen of the Town of Nicholasville, 36 S. W. 549, 38 S. W. 430, 18 Ky. Law Rep. 592—and which is by the way the first case construing this section—the court said: "The grant of the franchise of the town of Nicholasville to the Kentucky Water, Heating & Illuminating Company, in June, 1892, may be treated as void, because of the failure of the municipality to receive bids publicly after due advertisement as provided in section 164 of the Constitution."

In City of Somerset v. Smith, 105 Ky. 678, 49 S. W. 456, the attempt was made in 1897 to grant a franchise to an electric light and power company for the period of 20 years beginning in 1900. The court said : "It is contended that this contract is void, because in conflict with this constitutional provision. In this we concur. The franchise or privilege is said to be for only twenty years from its beginning, and that it begins when the present contract expires or is terminated. The present contract expires in 1900, and although it is provided that this privilege or franchise may begin before that date, and then extend only twenty years, yet the contract made is for more than twenty years, as it did not begin on the day of the ratification of the contract, but it is expressly postponed to some future date. Whatever may be said about the franchise, this is certainly a contract in reference to a franchise, and the term contracted for exceeds the constitutional limit."

In City of Providence v. Providence Electric Light Co., 122 Ky. 237, 91 S. W. 664, it was said in speaking of section 164 of the Constitution: "This section is mandatory and no contract made in violation of

its provisions can be enforced. Nor can any franchise or privilege be granted without a compliance with its requirements.'' To the same effect is Monarch v. Owensboro City Ry. Co., 119 Ky. 939, 85 S. W. 193; Keith v. Johnson, 109 Ky. 421.

In Merchants' Police & District Tel. Co. v. Citizens' Tel. Co., 123 Ky. 90, 93 S. W. 642, 29 Ky. Law Rep. 512, the facts were these: The appellee owned a legal franchise to operate a telephone plant in the city of Covington. The appellant, although using the streets of the city by permission of the council under an ordinance, did not obtain a franchise in the manner pointed out in the Constitution. The appellee brought a suit against the appellant to enjoin it from the use of the streets. The lower court granted the relief sought, and this court in affirming the judgment said: ''Therefore any effect or act of the council in granting a franchise or privilege contrary to this section (164) of the Constitution is absolutely void, and confers no right whatever upon the party securing the grant. * * * In our opinion appellant did operate its telephone without authority of law, and the attempted grant to it by the council is void and conferred no right whatever upon it. * * * It is conceded that appellee is a citizen and taxpayer of the city, and in our opinion as such it should have the right by action to prevent the further continuance of the wrong perpetrated by the council of that city in granting illegally the franchise to appellee by stopping it from the further exercise of its pretended rights thereunder. The appellee is interested with all citizens in saving the city from loss of its revenues by the illegal gift of valuable franchises which if sold legally would increase the revenues and thereby lessen the taxes of appellee and all citizens in the city.''

In Hilliard v. Fetter Lighting & Heating Co., 127 Ky. 95, 105 S. W. 115, 31 Ky. Law Rep. 1330, it is said: "Municipal authorities cannot grant a franchise or privilege for a use intended to be permanent except in the manner pointed out in section 164 of the Constitution. Nor can this section be evaded or its purpose nullified by making the grant for an indefinite period or for less than a term of years or by any other scheme or device.

In Frankfort Telephone Company v. Board of Councilmen of Frankfort, 125 Ky. 59, 100 S. W. 310, 30 Ky. Law Rep. 885, the telephone company was operating in the city under an ordinance giving it the right so to do, but not under a franchise obtained under section 164. It brought an action to enjoin the council from regulating its charges. The lower court dismissed its petition, and in affirming that judgment we said: "The framers of the Constitution intended by section 164 to take it out of the power of municipalities to give away franchises to do business within their boundaries." And in concluding the opinion, the court said: "It results that appellant has no franchise from the city of Frankfort and this being so it cannot be heard to complain that there has been established a rate of telephone charges which prohibited it from doing business therein."

In East Tennessee Telephone Company v. Anderson County Telephone Company, 115 Ky. 488, 74 S. W. 218, 24 Ky. Law Rep. 2358, the Anderson Telephone Company sued the East Tennessee Telephone Company upon an injunction bond to recover damages for its unsuccessful attempt to prevent it from exercising an alleged franchise it had obtained to do business in the city of Lawrenceburg; but the court

held that, as the Anderson County Telephone Company had never obtained in the proper way the right to the use of the streets of the city, it was a mere trespasser and could not sue and recover damages for interference with its rights, as it had no rights. To the same effect is Rough River Telephone Co. v. Cumberland Telephone Co., 119 Ky. 470, 84 S. W. 517, 27 Ky. Law Rep. 32; Rural Home Telephone Co. v. Kentucky & Indiana Telephone Co., 128 Ky. 209, 107 S. W. 787, 32 Ky. Law Rep. 1068; Maraman v. Ohio Valley Telephone Co., 76 S. W. 398, 25 Ky. Law Rep. 784. In these four last-named cases, section 164 of the Constitution was not involved. They are only cited for the purpose of illustrating that the occupation of a street by a public service corporation that has not obtained in a legal way the right to occupy them is a trespass. A citizen and taxpayer has the right to enjoin an unlawful exercise of power by municipal authorities where the attempt is made to grant rights, privileges, or franchises injurious to the taxpayer without authority so to do. Dyer v. City of Newport, 123 Ky. 203, 94 S. W. 25, 29 Ky. Law Rep. 656; Keith v. Johnson, 109 Ky. 421, 59 S. W. 487, 22 Ky. Law Rep. 947; Hilliard v. Fetter Lighting & Heating Co., 127 Ky. 95, 105 S. W. 115, 31 Ky. Law. Rep. 1330; Roberts v. Louisville, 92 Ky. 97, 17 S. W. 216, 13 Ky. Law Rep. 406, 844; Dillon on Municipal Corporations, section 914; City Item Printing Co. v. New Orleans, 51 La. Ann. 713, 25 South. 313; Collins v. Davis, 57 Iowa, 256 10 N. W. 643; Adamson v. Union Ry. Co., 74 Hun (N. Y.) 3, 26 N. Y. Supp. 136; Mayor and City Council of Baltimore v. Gill, 31 Md. 375; 28 Cyc. p. 1734.

Keeping in mind these opinions of this court, and applying the principles so often declared to the facts

of this case, it seems plain that when the city council by the mere enactment of an ordinance granted the street railway company a right to use and occupy Park place and Court avenue, its action was without authority, and the occupation of this street and public place by the company a trespass. There is no pretense of any sort or character in either brief or record that under any franchise previously granted in pursuance of the Constitution the railway company had the right to go upon or occupy any part of Park place or Court avenue.

It is said, however, in the opinion, that the purpose of the city in authorizing the railway company to occupy Park place and Court avenue was not the granting of a franchise but merely the right to relocate the tracks of the company for the benefit of the city and the public, and that the council had the power by ordinance to authorize this change. I do not know whether the city intended to grant a franchise or not when it authorized the occupation of these streets, but I do know that their occupation is a franchise within the meaning of the Constitution. The fact that the company paid to the council a consideration for permission to change its tracks from one street to another, or that the parties acted in good faith, is not entitled to any weight in disposing of the question presented. The suggestion in the opinion that a franchise for the use of Park place and Court avenue could not be sold to any other street railway company, I am not prepared to answer. There is nothing whatever in the record bearing upon the question. The record does not show how long Court avenue is, or how much of Park place the tracks of the railway company occupy, or whether or not this place or street is of much or

little value for railway purposes, or whether or not a franchise may be sold for the use of either of them. But it does show that they are permanently occupied and used by the tracks of the company, and this is all that is necessary to constitute a franchise or privilege.

I do not controvert the proposition that if a franchise is purchased to use several or any number of streets, and all of them are not occupied immediately, that the grantee may change its tracks from one street to another upon which it has a franchise, but that question is not here as it is admitted that the railway company never had a franchise to use or occupy Park place or Court avenue. Under the majority opinion, a public service corporation may obtain a franchise to use one street, and then for such consideration as the council will accept, get from it the right to use any other streets that it desires. Hereafter, when such a corporation—to illustrate—desires to obtain the right to use "A" street without buying it at a public sale made to the highest and best bidder after due advertisement, it may obtain under the Constitution a franchise to use "B" street and then trade its right to use "B" street with the council for the right to use "A" street. This is precisely what was done in this case. If the Constitution is to have the construction given to it by the opinion, then all we have written about the value of this section and its beneficial purposes, and all that we have said about its provisions being mandatory, count for nothing.

Judge Nunn joins in this dissent.

Judge O'Rear concurs in the views expressed in this dissent, except the fourth proposition dis-

cussed.    In his view the city council still has the right to expose the franchise to sale as provided in the Constitution, and ought to do so.    In this way the occupancy of the street may be legalized.    In this state the power to grant right of way in the streets of a city is wholly in the council.    The owner of the abutting property, much less the taxpayer, has no right to interfere so long as he suffers no peculiar damage in the matter of location.    The only thing the Constitution requires is that the city shall sell the right.    Not having done so the remedy of the complaining taxpayer is a mandamus against the city council to compel it to comply with the provision of the Constitution.    But he has not the right alone to sue to oust the street car company as a trespasser, any more than he would have the right to sue any other trespasser upon public property.    If the council refused to sue, or was so complicated in its relation to the railway company as that it could not act impartially, then and then only the taxpayer could sue in his own name, but in behalf of the city.

In this view of the matter, Judge O'REAR thinks the judgment should be affirmed.