# Cumberland Telephone & Telegraph Company v. City of Calhoun, et al.

(Decided December 17, 1912.)

## Appeal from McLean Circuit Court.

1. **Municipal Corporations—Taxation—Both a Franchise and a License Tax Cannot Be Imposed on a Corporation.—**Where a corporation has a franchise authorizing it to do business in a city, the council cannot charge it a license fee for the privilege of doing the business it acquired the right to do by the purchase of its franchise.

2. **Municipal Corporations—Franchise to Do Business in Municipality—How Obtained.—**Section 164 of the Constitution prescribes the manner in which franchises shall be obtained, and a city is not authorized or permitted to grant to any public service corporation the privilege to use or occupy the streets or public ways of the city except as provided in this section, and if a public service corporation uses or occupies the streets without first having obtained the right to do so under section 164, it is a trespasser and cannot invoke in its favor any of the laws enacted for the protection or benefit of corporations that have observed the law.

3. **Constitutional Law.—**Sections 163 and 164 of the Constitution must be read together.

4. **Municipal Corporations—Effect of License to Public Service Corporation to do Business.—**Where a municipal corporation passes a resolution permitting a telephone company to occupy its streets, this does not grant it a franchise, and the city has the right, after reasonable notice, to require it to vacate the streets.

5. **Municipal Corporations—License to Corporations to Occupy Streets.—**A municipal corporation has no authority to grant by resolution to a public service corporation the right to use the streets. This right can only be obtained by acquiring a franchise.

6. **Telephone Exchange—Franchise Not Required to Conduct.—**It is not necessary to obtain a franchise under section 164 of the Constitution to conduct a telephone exchange alone, but if the streets or public ways of the city are used in connection with the exchange, then a franchise is necessary to acquire the right to use the streets and public ways.

7. **Taxation—Imposition of Franchise Tax by State Board—Effect of.—**The State Board of Valuation and Assessment cannot confer upon any public service corporation the right to do business in any part of the State, or in any town or city. It merely assesses the property of the corporation that it finds, and the right to do business is obtained from other sources and under other provisions of the Ctnstitution and Statutes.

8. **Taxation—Oppressive License Tax—Burden of Proof.—**When a license tax is assailed upon the ground that it is unreasonable,

oppressive and confiscatory, the burden of proof is upon the party attacking the ordinance, and he must show by satisfactory evidence the truth of his charge.

9.  Taxation—Ordinance.—It is not necessary that an ordinance imposing a license tax should state the purpose for which the tax was levied.

J. W. BOSTON, WM. B. NOE for appellant.

G. H. CARY, L. P. TANNER for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This suit was instituted by the appellant against the city of Calhoun and the police judge thereof for the purpose of testing the validity of an ordinance that imposed a license tax of $100 upon appellant for the privilege of operating an exchange in the city and with the purpose of having the ordinance declared invalid.

Calhoun is a city of the fifth class, and the ordinance attacked imposed upon "each telephone exchange" a license fee of $100. The validity of the ordinance is assailed upon the ground that a telephone company, which pays both an ad valorem and a franchise tax to the city of Calhoun, as it is averred the telephone company did to the city of Calhoun, cannot be required to pay a business or occupation tax such as the ordinance provided for. The ordinance is also assailed upon the ground that the license tax imposed is unreasonable, oppressive and confiscatory.

No evidence was taken in the case, but it appears from the petition, which was dismissed by the lower court, that the appellant is a corporation, organized under the laws of Kentucky, and engaged in the operation of telephone lines and telephone exchanges in the city of Calhoun and elsewhere in the State. That in July, 1894, the board of trustees of the town of Calhoun, it being then a town of the sixth class, adopted the following resolution: "On motion it was ordered to let the Cumberland Telephone Company put up telephone poles on the west side of Ferry street to Second street; thence along Second street to Poplar street; thence along Poplar street to the river, without any damage to trees or property; said poles to be thirty feet above ground or over." That under the authority granted by this resolution, the telephone company soon after proceeded to erect lines and poles and to establish a telephone ex-

change in Calhoun, and has continued to the present time to conduct an exchange in the city and occupy many streets of the city other than those mentioned in the resolution, with its poles and wires.

It further appears that in 1906, 1907, 1908, 1909 and 1910 a franchise tax was imposed upon appellant by the State Board of Valuation and Assessment, which board apportioned to the city of Calhoun its proportionate part of the franchise tax for each of these years and the same was paid by the appellant to the city. It is further shown that it has paid for a number of years annually to the city an ad valorem or property tax upon its property situated therein.

If the appellant had in fact a franchise authorizing it to operate and conduct a telephone exchange in the city of Calhoun and to occupy the streets and it also paid an ad valorem or property tax to the city, it was not within the power of the council to charge it, as the ordinance does, with an occupation tax or a tax for the privilege of conducting its business in the city. This was expressly decided in Cumberland Telephone & Telegraph Co. v. Hopkins, 121 Ky., 850, where the court, in holding invalid a license tax attempted to be imposed by ordinance upon the Cumberland Telephone & Telegraph Co., for the privilege of operating an exchange and conducting its business in the city of Eminence, after it had purchased, in the manner provided in the Constitution, a franchise to do business in the city, said:

"After having sold the telephone company the privilege of putting up and operating its line and conducting its business in the town, the municipality cannot afterwards, without the consent of the telephone company, impose an additional charge for the identical privilege. This franchise sold by the city to appellant telephone company was the creature of the city. It was not only to occupy its streets, the consideration being compensation for the right of way, but it was for operating its exchange in the city and receiving tolls thereat upon its business. * * * The ordinance selling the franchise by its terms went further than to grant the right to occupy the city streets and alleys. It expressly dealt with and sold for a consideration the privilege of doing the identical business in the city that it is doing."

Again in Adams Express Co. v. Boldrick, 141 Ky., 110, in considering a similar question, we said:

"To put it in another way, the general council, under this statute, has authority to impose either a license tax or a franchise tax upon all corporations or persons engaged in business in the city, for the privilege of doing business there, but it cannot exact, for the privilege of doing business, both a franchise tax and a license tax at the same time or for the same period."

But the princip.e announced in these cases does not sustain appellant in its effort to defeat the license tax, because it never obtained, in the manner pointed out in the Constitution, a franchise from the city authorizing it to erect lines or poles or establish an exchange in the city. Section 164 of the Constitution provides that: "No county, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids. This section shall not apply to a trunk railway;" and a city is not authorized or permitted to grant to any public service corporation the privilege to use or occupy the streets or public ways of the city except as provided in the section.

Putting aside for the moment the consideration of the privilege conferred by the resolution, to which we will later advert, when a public service corporation uses or occupies the streets or public ways of a city without having first obtained the right to do so under section 164 of the Constitution, and in the manner prescribed by the Legislature, if legislation has been enacted to carry into effect the section, it is nothing more than a trespasser, and cannot invoke in its favor any of the laws enacted for the protection or benefit of corporations that have observed the law, or shield itself from the consequences that may be visited upon the head of a wrongdoer. Woodall v. South Covington & Cincinnati Street Ry. Co., 137 Ky., 512; Nicholasville Water Co. v. Board of Councilmen, 18 Ky. L. R., 592; City of Somerset v. Smith, 105 Ky., 678; City of Providence v. Providence Electric Light Co., 122 Ky., 237; Monarch v. Owensboro City Ry. Co., 119 Ky., 939; Keith v. Johnson, 109 Ky., 421; Merchants Police & Dist. Tel. Co. v. Citizens Tel. Co., 123 Ky., 90; Hilliard v. Fetter Light-

ing & Heating Co., 127 Ky., 95; East Tenn. Tel. Co. v. Anderson County Tel. Co., 115 Ky., 488; Rough River Tel. Co. v. Cumberland Tel. Co., 119 Ky., 470; Rural Home Tel. Co. v. Ky. & Ind. Tel. Co., 128 Ky., 209.

Coming now to consider the rights acquired by appellant under the resolution adopted by the council in 1894, and under authority of which the appellant company has been conducting its business, the argument is made in its behalf that this resolution in effect affords it the same protection that would have been afforded by the purchase of a franchise in the manner pointed out in the Constitution. But, for the reasons before stated, this position cannot be sustained. The resolution does not, in any manner or form, take the place of a constitutional franchise. At most it was only a license by the council to do business in the city, and merely protected the corporation against summary ouster.

Substantially this question was before us in East Tenn. Tel. Co. v. Board of Councilmen of City of Frankfort, 141 Ky., 588. In that case the East Tenn. Tel. Co. had a license to do business in the city of Frankfort, granted by the council in the form of a resolution very much like the resolution adopted by the council in this case, and under the license conferred by this resolution the telephone company had been operating in the city for many years. The city in 1909 adopted an ordinance the effect of which was to impose a heavy penalty upon the telephone company each day that it carried on business in the city without obtaining in the regular manner a franchise. Suit was brought by the telephone company to enjoin the prosecution of a number of warrants issued for the violation of this ordinance, and in considering the status of the company we said: "It is insisted for the telephone company that the rights given it by the resolution, after being accepted and acted upon, cannot be impaired by any subsequent action of the council, and that the franchise or privilege, being without limitation as to time, is perpetual. It will be observed that the resolution of April 11, 1881, does not purport to grant a franchise. It only grants permission to the telephone company to use the streets. A permission is no more than a license and, as a rule, a license may be withdrawn by the party who grants it. * * * The council has not as yet revoked their permission, and until it is revoked the grantee is rightfully in possession and cannot be fined for doing business without buying a

franchise." The court further held that the council should have given the telephone company ninety days in which to obtain a franchise or remove its property from the streets, and that in the meantime it could not be fined for daily violations of the ordinance.

But the principle announced in that case does not afford the appellant any protection against the payment of the license tax imposed by the ordinance. The city council of Calhoun is not attempting to impose a penalty upon the appellant for using the streets without a franchise, as was attempted to be done in the Frankfort case. It has only imposed a license tax upon the appellant for the privilege of conducting its "exchange" in the city and provided penalties if it continues to operate its exchange without the payment of the license fee. The city might have given the appellant a reasonable time in which to remove its property from the city or obtain a franchise, but in place of adopting this course it has treated the appellant as a mere licensee and levied a license tax upon its exchange, and this it had the right to do.

We do not hold that the city council could license in this manner the telephone company to occupy the streets or public ways of the city with its poles or wires; nor do we hold that the council could impose a license tax upon the company for using the street and public ways, as this would be in effect a recognition of its legal right to use the streets and public ways of the city under the resolution. There is, however, quite a difference between operating an exchange in the city and using the streets and public ways of the city. It is the use of the streets and public ways for which a franchise must be obtained and not for the mere operation of a telephone exchange. It is not necessary to obtain a franchise, under section 164 of the Constitution, merely to conduct a telephone exchange, but if the streets or public ways of the city are used in connection with the exchange, then a franchise is necessary, to acquire the right to use the streets and public ways.

As said in Bland v. Cumberland Tel. & Tel. Co., 109 S. W., 1180: "It should be borne well in mind just what the franchise is that is the subject of sale as required by the Constitution. It is not, as sometimes seems to be thought the right to operate a telephone exchange in a city. That right is not one to be granted or denied by the municipality any more than it could grant or refuse

a franchise to conduct a dry goods store within the city. The franchise under discussion is the permission to do something which the city has the right of control over; that is the occupancy of some part of the public streets.''

Section 163 of the Constitution provides in part: ''No telephone company within a city or town shall be permitted or authorized * * * to erect its poles, posts, or other apparatus along, over, under or across the streets, alleys or public grounds of the city or town without the consent of the proper legislative bodies or boards of such city or town being first obtained;'' and to obtain this right a franchise must be secured as provided in section 164.

As said in Rural Home Tel. Co. v. Ky. & Ind. Tel. Co., 128 Ky., 209: ''These sections of the Constitution must be read together, as the right to occupy the streets and public ways conferred by section 163 can only be granted in the manner provided in section 164.'' If the city had attempted to levy a license tax upon the company for the purpose of using the streets and ways of the city with its poles and wires, it might well have claimed exemption from the tax on the ground that the city had no authority to levy such a tax upon a corporation that had not secured, in the manner provided by law, the right to occupy the streets and ways. But as the city is seeking to charge the license fee only upon the business of operating an exchange, the fact that the company has not secured a franchise to occupy the streets and ways, does not deny the city the right to exercise the power conferred upon it by law to tax trades, occupations and businesses.

Another contention of counsel for the telephone company is that as the State Board of Valuation and Assessment has levied upon its property in this State each year a franchise tax and has apportioned each year a proper part of this franchise tax to the city of Calhoun, which has accepted it, this estops the city from imposing a license tax in addition to this franchise tax. Section 4077 of the Kentucky Statutes reads in part: ''Every telephone company * * * shall, in addition to the other taxes imposed upon it by law, annually pay a tax on its franchise to the State, and a local tax thereon to the county, incorporated city, town or taxing district where its franchise may be exercised.'' * * *

Under this and other sections of the same article of the Kentucky Statutes the State Board of Valuation and

Assessment assesses each year the value of the franchise of telephone companies and other public srrvice corporations, and on the assessment so made these corporations pay a tax to the counties, cities and towns in which they operate in proportion to the value of the franchise in each taxing district or municipality. But the State Board of Valuation and Assessment cannot and does not confer upon any of these corporations the right to do business in any part of the State, or in any town or city therein. It merely assesses the property of the corporation that it finds in the State. The right to do business is obtained from other sources, and under provisions of the Constitution and Statutes entirely disconnected from the one creating the State Board of Valuation and Assessment, which is merely an assessing authority. It is, therefore, very clear that the telephone company, by the imposition of this tax by the State Board of Valuation and Assessment, obtained no right whatever to conduct its business in the city of Calhoun, or to use or occupy the street of the city, or operate therein an exchange.

It is further insisted that the license tax imposed is unreasonable, oppressive and confiscatory. This contention was asserted in an amended petition, all the allegations of which were controverted by an answer, and the case was then submitted upon the pleadings and exhibits alone, no evidence being offered by either party, and judgment rendered dismissing the petition. With the record in this condition we cannot say that the tax imposed is unreasonable, oppressive or confiscatory. When a license tax is assailed upon this ground, the burden of proof is upon the party attacking the ordinance, and he must show by satisfactory evidence the truth of his charge. Bradford v. Jones, 142 Ky., 820; Wells v. Town of Mt. Olivet, 126 Ky., 131.

It is also urged that the ordinance is invalid in that it does not state the purpose or purposes for which the license tax prescribed in the ordinance is levied. This argument is answered adversely to the contention of counsel for appellant by the opinions of this court in Shugars v. Hamilton, 122 Ky., 606; Brown-Forman v. Commonwealth, 125 Ky., 402; City of Mt. Sterling v. King, 126 Ky., 526.

The judgment affirmed.