## ULLMAN *v.* THOMAS.

FRAUDULENT CONVEYANCES—HUSBAND AND WIFE—REVIVED DEBT —EVIDENCE.

A wife, being possessed at marriage of $500 saved from her earnings, gave the same to her husband to assist him in the purchase of a place of business, he promising, as she claimed, to repay her, though no note or other evidence of indebtedness was executed. Twenty-two years later, the husband, at the time insolvent, caused conveyances to be made which should invest in his wife and himself, as tenants by the entirety, the title to their homestead, which had been purchased by him in his own name with the proceeds of the earlier purchase. The wife was ignorant of his insolvency, and supposed the conveyance to be pursuant to his repeated promises to secure her for the loan. *Held,* that creditors could not attack the transaction as fraudulent, so far as the wife was concerned.

Appeal from Jackson; Peck, J. Submitted December 4, 1900. Decided February 27, 1901.

Bill by Morris Ullman and others against John C. Thomas, Augusta Thomas, and John Murray in aid of execution. From a decree dismissing the bill, complainants appeal. Affirmed.

*Wilson & Cobb,* for complainants.

*Blair, Smith & Townsend,* for defendants.

LONG, J. We have read the record and briefs in this case, and arrive at the same conclusion reached by the court below. That court filed a written opinion in the case, which is returned with the record, and we adopt it. It is as follows:

"The bill of complaint in this case was filed in aid of an execution issued upon a judgment rendered in the cir-

cuit court for the county of Jackson, May 1, 1897, in favor of the complainants and against the defendant John C. Thomas, for $593.72 damages, and costs taxed at $25.64. The execution was issued May 1, 1897, and on the 10th of the same month was levied upon the lands in question. The debt upon which the judgment was based existed prior to the date of the conveyances assailed by the bill as fraudulent. For some years prior and up to June 10, 1896, the defendant John C. Thomas owned lot 1 in block 4 of Livermore, Wood & Eaton's addition to the city of Jackson, and on that day he and his wife, the defendant Augusta Thomas, quitclaimed the property to one John Murray for a stated consideration of one dollar. On the same day, and at the same time, said John Murray quitclaimed the premises for the stated consideration of one dollar to the defendants John C. Thomas and Augusta Thomas, 'husband and wife, as joint tenants.' Both these conveyances were recorded September 7, 1896. No consideration actually passed from or to Murray for these conveyances. He was a mere intermediary, used for the purpose of changing the title of the premises from the defendant John C. Thomas to himself and wife, Augusta Thomas, as husband and wife. It is claimed, however, that a good and sufficient consideration passed from Augusta Thomas to her husband, John C. Thomas. These are the conveyances attacked by the bill as fraudulent.

"The relation of these parties, and the history of the circumstances out of which the claimed consideration grew, as shown by the proofs, are substantially as follows: The defendants John C. Thomas and Augusta Thomas were married 26 or 27 years ago in the State of New York. Before her marriage, Augusta M. Thomas was a dressmaker. The parties resided at Byron Center, a small village in Western New York. At the time of her marriage, she had saved from her earnings as a dressmaker about $500. $400 or $425 of this amount was then in the hands of a married sister, Mrs. Emily Thomas, with whom she had made her home for five or six years before her marriage; and $100 of which she had about a year before that time loaned to another sister, then residing in Cleveland. About a year after their marriage, the parties removed from Byron Center to the village of Horton, in this county. When they left New York for Michigan, the sister Emily Thomas gave the

defendant Augusta Thomas the money then in her hands, belonging to her, about $425. On her way West she stopped at Cleveland, and collected the $100 then in the hands of her other sister, and brought the money—about $500—with her to Horton. She never deposited the money in a bank, either in New York or Michigan. There was no bank at Byron Center, or at any other point nearer that place than about 14 miles. She brought the money with her in the form of currency. She kept it by her in her dress and on her person. Upon arriving at Horton with her husband, the defendant John C. Thomas bought a piece of property having a building thereon for something like $2,000, taking the title in his name, and took possession of it, using a portion of it for business purposes,—keeping a saloon,—and another part as a residence for himself and wife. When he bought this property, his wife let him have her money, $500, to assist in paying for it, and he used it for that purpose. She testifies that she loaned him the money to help him along, and that he said he would pay it back to her. She took no note from him, or other written evidence of indebtedness. He never made any payments on it from the time she let him have it until the conveyance in question was made, a period of something like 22 years. Neither was there ever any specific agreement made between them that he should pay interest on the money. She often asked him to repay her, and he always promised he would, but continually put it off, saying he would pay her when he accumulated enough, or when he could.

"After residing in Horton for three or four years, the parties removed to the city of Jackson, and the defendant sold the Horton property. About a year and a half after coming to Jackson, John C. Thomas bought the premises in question for about $2,200, taking title in his own name. The premises consisted of a city lot with a residence on it, and some other improvements. After purchasing this property, the parties went there to reside, and it has ever since constituted their home. Since its purchase quite extensive repairs have been made; a barn has been built, a furnace was put in, and it has been fitted up with modern improvements, and well kept up. The value of this property on June 10, 1896, was about $3,000.

"After coming to Jackson to reside, John C. Thomas often spoke to his wife about repaying the loan from her; said he would pay it sometime; that he would pay or

secure her. She importuned him from time to time to repay it or secure her. On one occasion when she spoke to him about it, he said he had fixed things so she would be all right, and she understood from that he had made a will, and that was satisfactory to her at the time. In the year 1891 she asked him, in substance, if he had, and, if not, if he would secure her. After that she never knew positively whether he had or not. She trusted him to attend to it. The matter ran along without any other distinct understanding until June 10, 1896, the day the deeds in question were executed. On that day he wanted her to come down to a lawyer's office, and told her he was going to make a joint deed of the home, and that would secure her. She did come down, and the conveyances in question were executed. There was no computation of the amount due her at that time, or anything said between them as to the amount of her debt. She was told that it was necessary, in order to make a joint deed, that the property be conveyed to a third person. Without any other understanding, the deeds in question were executed, she understanding that thereby her loan to her husband was being paid or secured to her. After these deeds were made, John C. Thomas kept them for a time, and finally told her to put them on record. She delayed until he spoke of it again, when she let him take them for the purpose of getting them recorded, and supposed he did so. In her answer filed in this case she alleges that there was justly and truly due her at that time about $1,300; but at the time the deeds were made there was no figuring up of the amount of her debt, or any talk as to what it aggregated.

"When these conveyances were made, the defendant John C. Thomas was insolvent, owing other indebtedness than that to his wife, in various amounts, and to various creditors, some of which have been since compromised at 50 cents on the dollar, and some of which, so far as the proof shows, have not been paid at all. At the time the conveyances were made, Mrs. Thomas did not know that the defendant owed any other debts than the one to her. He had not been accustomed to talk over with her his private business affairs, and she knew nothing about his financial situation. The deeds in question were made in payment of what he owed her, and without intent on her part to hinder, delay, or defraud his other creditors. So far as the defendant John C. Thomas is concerned, he knew at

the time the deeds were made that he was insolvent, and that by making the deeds in question he was putting the property in question beyond the reach of his creditors; and I am convinced that it was his intention, in making the deeds, to satisfy his wife's claim, and put the property beyond the reach of his other creditors.

"It is impossible to estimate with accuracy the value of the interest which Mrs. Thomas acquired by these conveyances. Its legal character can be clearly stated, but the value of the additional interest secured to her cannot be estimated with any degree of certainty. The property was their homestead before the deeds in question were made, but was worth double the homestead right in value. She also had an inchoate right of dower. After these deeds were made, they held it as husband and wife, by entireties. Whether the additional right so acquired by these deeds exceeded the amount of her debt at that time, with interest, cannot be calculated, and so it cannot be determined whether the consideration paid for her newly-acquired right in the property was adequate or inadequate. The defendant John C. Thomas, although present at the hearing, was not sworn as a witness. He was not called to the stand by the complainants or his wife, Augusta Thomas; nor did he voluntarily testify in the case, although he had filed a separate answer. It is plain from the proofs taken that many, if not all, the facts and circumstances upon which his wife, Augusta Thomas, relies, were within his personal knowledge.

"The complainants having introduced in evidence the judgment against John C. Thomas, the principal defendant, the execution, with the levy thereon indorsed, and the proof of the conveyances complained of, the burden of proof, under Act No. 99, Pub. Acts 1897, is upon the defendants to show that the transaction involving the giving of the deeds complained of was in all respects bona fide.

"The indebtedness which it is claimed constituted the consideration for the conveyances attacked arose about 22 years before the deeds were made. No written evidence of the debt was ever given, and no payments of principal or interest have been made thereon in the meantime. It is in the nature of a 'revived' claim, and, under our decisions, to constitute it a sufficient consideration, the claim must be founded upon an acknowledged and recognized indebtedness. The transaction was be-

126 MICH.—5.

tween husband and wife; and it had the effect to place John C. Thomas' interest in the premises beyond the reach of his other creditors. John C. Thomas, whose testimony would have been material in his wife's interest if her theory is true, was not called upon to testify, although present in the court-room during most of the trial. Under these circumstances, the transaction should be closely and carefully scrutinized, and the court should not find for the defendant Augusta Thomas, unless it clearly appears from the proofs that the transaction, so far as she is concerned, is an honest one.

"The fact that Mrs. Thomas had the $500 at the time of her marriage is proved, not only by her own oath, but the testimony of her sister Emily. That she loaned it to her husband, and that from that time forward to the date of the conveyances in question it was an acknowledged and recognized indebtedness, which he repeatedly promised to pay or secure, is proved only by the testimony of Mrs. Thomas. The only other evidence there could be of those facts is that of her husband, as it appears from her statement that the subject was never talked over in the presence of any other person, and he was not called to testify; but, considering her statement in all its particulars, I am satisfied that it is substantially true. True it is that the business was not conducted with the same care and business prudence that would be expected between business men or strangers; but it is not more unusual than is frequently found where the relation between the parties is that of husband and wife, and where the wife trusts the husband, so far as her business affairs are concerned; and, so far as she is concerned, it must be held that the transaction was an honest one, by which she intended to secure the payment and satisfaction of her debt, and did not intend to hinder, delay, or defraud the creditors of her husband; and as to her the complainants are not entitled to the relief prayed for in their bill, and, so far as she and they are concerned, the conveyances are valid. The bill will therefore be dismissed, with costs, and a decree to that effect may be prepared and presented for signature.

"ERASTUS PECK, Circuit Judge."

The decree below must be affirmed.

The other Justices concurred.