## Adams Express Co. v. Boldrick, Police Judge.

(Decided December 8, 1910.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Municipal Corporations—License and Franchise Taxes.—The charter of the city of Louisville authorizes the city council to levy a franchise tax or a license tax upon corporations and persons for the privilege of doing business in the city. But, under this authority, both a franchise tax and a license tax cannot be exacted for the same time. The council may impose either, but not both.

2. License Taxes—Double Taxation.—Where a city imposes a license or franchise tax for the privilege of doing business in the city, it cannot levy a license tax upon an agency or instrumentality indispensible to the conduct of such business, as this would be in effect imposing a double tax for the privilege of doing business.

3. License Taxes—Double Taxation.—But the right or the privilege to do or carry on a business is one thing, and the agencies or instrumentalities by or through which it is carried on may be another. And if the agencies or instrumentalities are not indispensible to the conduct of the business, then they are subject to a license tax, and such a tax will not amount to double taxation.

4. License Taxes—Double Taxation.—Where a person or corporation pays a license tax for the privilege of doing business in a city, and in carrying on the business uses vehicles that are not indispensible to the conduct of its business, it may be required to pay the tax levied by an ordinance upon all vehicles in use in the city.

5. Application of Principle.—The Adams Express Company obtained a license authorizing it to do business in the city of Louisville. In the conduct of its business it delivered in its wagons packages in certain parts of the city, and in other parts it did not. The city sought to tax the wagons under a general vehicle tax. Held, that it had the right to do this, as wagons although used in the business, were not indispensible to carrying it on.

TRABUE. DOOLAN & COX, LAWRENCE MAXWELL, JR., and JOSEPH S. GRAYSON for appellant.

CLEM W. HUGGINS and FRANK COYLE for appellee.

Opinion of the Court by Judge Carroll—Affirming.

The question presented by this appeal is, whether or not an ordinance of the city of Louisville imposing a license tax upon wagons is applicable to the appellant company. The ordinance reads in part:

"For each and every wagon, cart, dray, omnibus or other vehicle not especially designated herein, drawn by a single animal, the license shall be three dollars per year; drawn by two animals, six dollars per year."

The appellant company refusing to pay the license fee upon wagons owned and operated by it in the city of Louisville, it was fined for a violation of the ordinance in the police court, and thereupon it brought this suit in equity to prohibit the appellee from enforcing the collection of the fine. In the lower court its petition was dismissed, and it appeals.

The ground upon which it resists the payment of the license tax is that it pays an ad valorem tax upon its property in the city and a franchise tax for the privilege of conducting its business in the city, and having paid both of these taxes, it insists that it should not be required to pay a license tax for the privilege of running wagons that are necessary in the conduct of its business. It further claims exemption from this tax upon the ground that a proviso in section 2980 of the Kentucky Statutes, which is that part of the charter of cities of the first class under which the city was given power to impose license fees and under the authority of which the ordinance in question was enacted, exempts corporations paying an ad valorem and a franchise tax from the payment of a license tax.

But, we do not think the proviso in section 2980 of the Kentucky Statutes was intended to be or is authority for the exemption claimed. To understand clearly the meaning of this proviso, it is necessary that the section, of which it is the last paragraph, should be in part copied. This section provides that:

"Each city shall raise a revenue from ad valorem taxes, and from a tax based on income, license and franchises, and to that end the General Council of each city is hereby authorized and empowered to provide each year, by ordinance, for the assessment of all real and personal estate within the corporate limits thereof, subject to taxation for State purposes, and may levy an ad valorem tax on the same not exceeding the rate

and limit prescribed in the Constitution, * * * and may provide for taxation, for municipal purposes, on personal property, tangible and intangible, based on income, licenses or franchises in lieu of an ad valorem tax thereon; Provided, such general council shall not be authorized to omit the imposition of an ad valorem tax on such property of any steam railroad, street railway, ferry, bridge, gas, water, heating, telephone, telegraph, electric light or electric power company. * * * All license taxes, including all taxes on personal property, tangible and intangible, based on income, licenses and franchises, in lieu of an ad valorem tax thereon, shall be collected by the Secretary and Treasurer of the Commissioners of the Sinking Fund. * * * Nothing in this section shall be construed as to deprive the General Council of the power hereby granted to it to provide by ordinance in its discretion for the levy and collection of taxes based on income, license and franchise in addition to ad valorem taxes on the property of any corporation whose franchise is subject to assessment by the City Assessor. * * * Provided, that no corporation, individual, firm or association, which pays an ad valorem tax and a franchise tax shall also be required to pay a license tax.''

It will be noticed that by this section the general council is authorized to impose upon corporations, individuals, firms or associations a franchise tax for the privilege of doing business in the city, or a license tax for the privilege of doing business in the city, and the only purpose of the proviso was to prohibit the council from imposing both a franchise tax and a license tax at the same time upon individuals, corporations, firms or associations for the privilege of engaging in business. To put it in another way, the general council under this statute has authority to impose either a license tax or a franchise tax upon all corporations, or persons, engaged in business in the city for the privilege of doing business there, but it cannot exact for the privilege of doing business both a franchise tax and a license tax at the same time or for the same period. It follows from this that as the appellant company pays an ad valorem tax upon its property, and a franchise tax for the privilege of doing business in the city of Louisville, that it could not be required to pay a license tax for the privilege of doing business. And this brings us to a consideration of the principal question in the case,

viz: Is the imposition of a vehicle tax upon wagons used by the appellant company in the conduct of its business a license tax for the privilege of doing business in the city? If wagons were an indispensable necessity in the conduct of its business, then we would say that a license tax imposed upon its wagons would be in effect a license tax upon its privilege to do business, because it could not do any business unless it used wagons, and so to levy a tax upon its wagons would be to levy a tax upon its right to do business. This very question was before us in Cumberland Telephone & Telegraph Company v. Hopkins, Police Judge, and L. & N. R. Co. v. Hopkins, Police Judge, 121 Ky., 850. From the opinion in these cases it appears that the telephone company operated a telephone exchange in the town of Eminence, and that the railroad company operated a line of railroad passing through Eminence. The city council of Eminence enacted an ordinance imposing a license fee of $50.00 per annum upon the business of handling for pay telephone messages in the city, and an annual license fee of $25.00 upon the business of selling railroad tickets. The corporations assailed the validity of the ordinance upon the ground that as they were required to pay an ad valorem tax to the city as well as a franchise tax, they could not be required to pay the license fee imposed by the ordinance. This contention was upheld by this court upon the ground that the telephone company could not transact business without an exchange, or the railroad company transact business without a ticket office, and so the imposition of the license tax was a tax upon the privilege of doing business in the city, to secure which right it had already paid a franchise tax. As illustrating the view the court had of the subject, we quote the following from the opinion in reference to the telephone company:

"The court is of opinion that, after having sold the telephone company the privilege of putting up and operating its line and conducting its business in the town, the municipality cannot afterwards, without the consent of the telephone company, impose an additional charge for the identical privilege. This franchise sold by the city to appellant telephone company was the creature of the city. It was not only to occupy its streets, the consideration being compensation for right of way, but it was for operating its exchange in the city and receiving tolls thereat upon its business. It was that or nothing.

\* \* \*   It expressly dealt with, and sold for a consideration, the privilege of doing the identical business within the city that it is doing."

The difference between the telephone case and this one lies in the fact that in the telephone case the companies upon which the license taxes were imposed could not transact any business without a depot or an exchange, and so the licenses were necessarily a tax upon the privilege of doing business. The analogy between the telephone case and this would be complete if the city had levied a license tax upon the agent of the company in charge of its business in Louisville, because it could not transact any business there without an agent, and so when it paid a franchise tax for the purpose of doing business in the city, this necessarily carried with it the right to have an agent there to do the business it had paid to do. In other words, when a license tax or a franchise tax is imposed upon a corporation or person for the privilege of doing a specified thing, then no other tax can be levied upon this identical privilege, nor can this same privilege be taxed again. If this were allowable, it would be double taxation as much so as if two property taxes were levied upon the same property, or two occupation taxes levied upon the same person for doing the same thing. But the right or the privilege to do or carry on a business is one thing, and the agencies or instrumentalities by or through which it is conducted or carried on may be another. The agencies or instrumentalities may be indispensable, and such a part of the business as to be in fact the business itself, as, where a person pays a tax for the privilege of running a wagon, and carries on his business alone through the instrumentality of this wagon. Then, again, the agencies through and by which a business is carried on may be merely adjuncts or features of the business, and not indispensable to its conduct, as, where a butcher takes out an occupation tax to carry on the business of butchering, and uses as an instrumentality in his business a wagon for the purpose of delivering meats to his customers. So that, it does not necessarily follow that because the city permits a person to do business and exacts from him the tax for the right to do so, that it is thereby denied the right to tax any agency or instrumentality through or by which he carries on his business. If this were true, then the doctor who pays an

occupation tax for the privilege of practicing medicine, and a property tax upon all his property, could not be required to pay a vehicle tax if he concluded to use one in visiting his patients. And the same rule of exemption would apply to every merchant who is required to pay an occupation tax, and a property tax, and also a vehicle tax if he uses a vehicle in his business. When a license tax is imposed upon one of the agencies through or by which business is carried on, this tax is not necessarily levied upon the privilege to do the business; it may be laid only upon one of the means by which it is done, and if the argument of the company was sound, then it would follow that when a corporation obtained and paid for a license giving it the right to do business, that it would be entirely exempt from all other species of license taxes that might be levied upon other persons that were doing as individuals precisely the same things that it did through its agencies and instrumentalities in the transaction of its business. In short, it could run wagons, employ auctioneers, send out peddlers, put booths on the street corners, and in a great variety of ways use agencies and instrumentalities in its business, and yet be exempt from the license tax that other persons who were doing these identical things must pay. This we think would be an unfair discrimination in favor of the big concern and against the little one—in favor of the corporation and against the individual. And so we think that if in the conduct of its business a corporation chooses to do things for the purpose of increasing its business or other reasons, and things that other people are taxed to do, it should pay for doing such things the same tax that others pay, unless the things it so does are indispensable to the conduct of the business that it has paid a license or franchise tax to do. There is no injustice or discrimination or double taxation in this. The same person might follow several different occupations, for each of which he might be required to pay the tax levied upon persons engaged in that occupation. For example, an attorney at law might also be a real estate agent, and if he was we doubt if any person would contend that he could not be required to pay the license tax imposed upon attorneys at law as well as the license tax imposed upon real estate agents. Illustrations like this might be multiplied without number, but the thing is so plain that it does not seem necessary to extend this line of argument further.

In Harder's Fire Proof Storage and Van Co. v. City of Chicago, 235 Ill., 58, 85 N. W., 245, the only business of the company was crating and removing furniture and merchandise in wagons from one point to another in the city of Chicago. It paid a property tax and a license tax for the privilege of carrying on its business. It resisted the payment of a tax upon its wagons levied under the authority of a general ordinance imposing a tax upon all vehicles, upon the ground that the license tax it paid for the privilege of doing business carried with it the right to use wagons in the conduct of its business, as that was the only way in which it did business. But the court rejected the contention of the company and held the ordinance applicable to it, saying in the course of the opinion:

"The question which is now to be considered is whether or not in addition to the ad valorem tax on vehicles as property, and a license tax to pursue an occupation in which vehicles may be used, there may be imposed also a license tax upon the right or privilege of using vehicles upon the public streets and highways. Precisely the question is, whether or not a license tax upon an occupation in which the owner of vehicles is engaged and in the pursuit of which he uses such vehicles, and a license tax upon the right to use such vehicles upon the public streets and highways, are taxes upon the same thing, and hence double taxation. * * * Taxation upon each of these three different subjects is not double or treble taxation simply because one person may have to pay two or all of the three taxes, since it is not the person who is taxed, but his property and privileges. One person may avail himself of a half dozen or more different privileges, for each of which he may be required to pay a tax or license fee."

The Supreme Court of Missouri in St. Louis v. Weitzel, 130 Mo., 601, had before it the same question, and ruled as did the Illinois court. It will thus be observed that these courts have gone further than we have in sustaining taxes such as are sought to be enforced in this case, as in the cases cited the courts hold that without regard to the question whether the vehicles were indispensable in the conduct of the business a license tax might be exacted for their use in addition to the property tax and franchise tax. And many courts hold this view, as may be seen by an examination of the

cases cited in the note to City of Newport v. Fitzer, 21 L. R. A., N. S., 279.

In Wilson Brothers v. City of Lexington, 105 Ky., 765, the city enacted an ordinance providing that every person conducting a livery, feed or sale stable should pay an annual license of ten dollars, and in addition thereto pay a yearly license for all vehicles kept in the stable for hire. This ordinance was assailed upon the ground that it was double taxation, the argument being made that the license exacted to carry on the business of a stable keeper necessarily carried with it the right to do, without further taxation, those things that stable keepers usually engage in, as, letting out vehicles for hire. But the court sustained the validity of the ordinance, putting its decision, however, upon the ground that the license fee for conducting the stable and the license tax on each vehicle kept for hire was really only one tax. But we think the court might well have put its decision upon the ground that the privilege of conducting the stable might be taxed and a separate tax laid upon each vehicle kept therein for hire, as keeping vehicles for hire although a usual and customary part of the business of a livery, feed and sale stable, is not indispensable to the conduct of such a stable.

But, it is said by counsel for appellant that the case of City of Newport v. Fitzer, 131 Ky., 544, sustains their argument that the tax upon the wagons of the company was unauthorized. We do not think so. The City of Newport enacted an ordinance requiring persons who engaged in the business of huckstering or peddling to pay a license fee of twenty dollars when the business was carried on in a wagon. Fitzer paid the twenty dollars license fee, but refused to pay a general vehicle tax of three dollars imposed under another ordinance, and the court said:

"To compel appellee after paying for taking out a license which authorized him to use his wagon upon the streets of Newport in peddling his wares to pay for and take out an additional license for the same privilege conferred by the first, namely, to use or operate the same wagon upon the streets in the same business, would, it seems to us, to amount to double taxation. * * * In other words, if one pays a license tax to obtain the privilege to peddle with a wagon in the city of Newport, he obtains with the privilege the right to the free use of

the streets of the city with his vehicle, for the only occupation or business authorized by the license cannot proceed without the use of the wagon, and the wagon cannot be employed in the business without the use of the streets of the city.''

It will be observed that the court followed the opinion in the Hopkins case, supra, and laid down in effect the same rule that we have announced in this opinion.

The case of City of Louisville v. Weikel, 137 Ky., 784, we do not regard as pertinent to the questions involved in this case.

Coming back now to the vital question in this case, viz: whether or not the use of wagons was indispensable to the business of appellant, or, in other words, could it do business without wagons? It may be conceded that in the express business it is usual and customary to have wagons, and that a part and perhaps the largest part of such business in cities is done with the aid of wagons. But this is not enough to entitle an express company to the exemption from the vehicle tax. It must appear that it could not transact business without the use of wagons. And this, the evidence does not show. On the contrary, the proof is that in the city of Louisville the appellant company has established what it terms ''free delivery limits,'' that is, a boundary in which it delivers express packages in its wagons, but, outside of these limits that it has arbitrarily described, it does not deliver packages. In other words, the municipal territory in which it delivers packages in wagons is not near as large as the municipal territory in which it does not deliver them, although the population within the delivery limits is larger than the population outside the delivery limits. This condition demonstrates that the use of wagons is not indispensable in the conduct of the business of the appellant company.

As well said by the chancellor:

''The appellant company uses its wagons in such districts as it deemed it profitable to use them, * * * leaving one-third to one-half of the population of Louisville out of its free services. This shows that the wagons are a convenience only and not a necessity of the express business. The evidence shows that a substantial part of its business, either from necessity or choice, comes to it from the country, without the use of wagons. * * * The fact that it uses wagons in a circumscribed and prescribed district, which it can change and abol-

ish at pleasure, negatives the claim that wagons constitute a necessary part of its business, and that its business could not be otherwise conducted.   It may carry on its business more profitably in the closer and more thickly populated district with wagons, but they are no more a part of the business than the half dozen or more delivery wagons of the successful retail grocery are a part of the grocery business.''

Wherefore the judgment is affirmed.