## Hardin County Kentucky Telephone Company v. City of Elizabethtown et al.

(Decided January 18, 1929.)

(As Modified on Denial of Rehearing, March 15, 1929.)

L. A. FAUREST and H. L. JAMES for appellant.

HAYNES CARTER for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On February 1, 1897, the city council of the city of Elizabethtown passed an ordinance whereby it was ordained that any person, partnership, or corporation should be given the privilege to erect and operate a telephone system and exchange within the corporate limits of the city by paying to the city treasurer the sum of $100. Certain regulatory provisions were incorporated in the ordinance, none of which is pertinent to the questions involved in this case. Shortly thereafter two individuals as partners paid to the city treasurer the required $100, and by motion duly passed by the council it was ordered "that they be and they are hereby granted the right to erect and operate a telephone exchange in Elizabethtown as provided in the ordinance heretofore passed." They erected poles in the streets and constructed their system and exchange in the city and operated it until in 1900, when they formed a corporation and transferred their rights and property to it, and to all that corporation's rights the appellant and plaintiff below, Hardin County Kentucky Telephone Company, is the successor. It and its predecessors, as indicated, have operated the local telephone system continuously since its construction, but in the meantime (the record does not explain when or how) the Cumberland Telephone & Telegraph Company constructed within the city a competing telephone system; but its system was purchased by the Gainsboro Telephone Company in 1926, with the permission and consent of the city, hereinafter referred to and discussed.

At a meeting in February, 1926, the city council of the city passed an ordinance imposing an annual license tax of $100 per annum "upon telephone, telegraph, public utility or express companies" engaged in business within the corporate limits of the city and fixing penalties for engaging in business without having previously paid the annual license fee. The ordinance, however, contained

this proviso: "Provided, however, that the license tax provided herein shall be in lieu of all franchise or other intangible taxes in said city."

On June 7, 1926, the city council passed an ordinance fixing maximum rates for telephone service of any telephone company operating within the city limits and prescribing penalties for its charging higher rates than the ordinance prescribed. Plaintiff declined to comply with the terms of either of those ordinances, and it was cited for trial in the police court of the city of Elizabethtown on a number of such charges, when it filed this equity action in the Hardin circuit court against the appellees and defendants, City of Elizabethtown, its mayor, its police judge, and its city attorney, seeking to enjoin the prosecutions already instituted, and to enjoin the institution of other similar ones, upon the ground that each of said ordinances was invalid as beyond the authority of the city council to ordain. The answer consisted of a denial of some of the material averments of the petition, and also a paragraph containing a counterclaim in so far as the fixing of rates was sought to be enjoined and which counterclaim was based upon a contract entered into February 15, 1926, by and between the city and the Gainsboro Telephone Company by its vice president, J. N. Cox, in which it was substantially stipulated, inter alia, that in consideration of the city consenting for the Gainsboro Telephone Company to purchase the local system then operated by the Cumberland Telephone & Telegraph Company, the former (Gainsboro Telephone Company) agreed to "continue to render service to its local patrons free of toll to all parts of Hardin county served by the local exchange (that of the Cumberland Telephone & Telegraph Company, which it then contemplated and did thereafter purchase), and that it will respect and obey all ordinances now in force regulating the duties, rates, charges, location of poles, wires, and other properties, etc., and shall render itself amenable to all reasonable ordinances hereinafter enacted relating to and regulating the conduct of the business of telephone companies in this city."

Proper pleadings made the issues, and upon final submission the court by its judgment perpetually enjoined defendants from prosecuting plaintiff for violating the above ordinance fixing rate charges to its patrons, but dismissed the petition in so far as it sought an in-

junction against enforcing the collection of the annual fee of $100 aganist it as prescribed by the first ordinance above referred to. The judgment also dismissed the counterclaim of defendants based upon the contract, supra. From so much of the judgment as denied plaintiff relief against the enforcement of the ordinance requiring it to pay an annual fee of $100, it has prosecuted this appeal, and defendants, in this court, obtained a cross-appeal from so much of the judgment as dismissed its counterclaim. The order in which we will discuss and dispose of the questions will be: (1) The right of the city to enact the first ordinance supra imposing a license fee of $100 per annum; (2) the right of the city to enforce the rate fixing ordinance as against plaintiff; and (3) the questions involved in the counterclaim contained in the answer.

■ It is argued by counsel for plaintiff in their brief that their client has heretofore been paying to the city of Elizabethtown a tax on the value of its franchise, assessed pursuant to the provisions of section 4077 of our present Statutes, and that under the rule as announced by us in the cases of Cumberland Telephone & Telegraph Co. v. Hopkins, 121 Ky. 850, 90 S. W. 594, 28 Ky. Law Rep. 846, and American Express Co. v. Commonwealth, 187 Ky. 241, 218 S. W. 453, 219 S. W. 427, the city was without authority to levy and collect an additional occupational or privilege tax for the right to engage in the business within the city, since to do so would be a species of double taxation and violative of the provisions of section 171 of the Constitution prescribing uniformity of taxation on all property. Conceding the soundness of the two opinions relied on and cited, supra, the rule contended for has no application to the facts of this case for two reasons: First, the ordinance levying the annual license fee expressly exempts the utility from which it is exacted from the payment of any "franchise or other intangible taxes to the city," and expressly provides that the license tax of $100 per annum "shall be in lieu" of all such franchise and intangible taxes, and which effectully eliminates the very ground upon which the two opinions relied on were based. Second, the doctrine of the two cited and relied on cases has no application and does not preclude the city from exacting an annual license fee, except and unless the utility from which it is exacted has purchased and thereby become the owner of a franchise

right to operate within the city pursuant to the provisions of section 164 of our Constitution, and which was so expressly held in the cases of Adams Express Co. v. Boldrick, 141 Ky. 113, 132 S. W. 174, and Cumberland Telephone & Telegraph Co. v. City of Calhoun, 151 Ky. 241, 151 S. W. 659, 43 L. R. A. (N. S.) 1037, Ann. Cas. 1915A, 130. In them and others referred to we held that where the operator of a public utility within a municipal corporation had not obtained a franchise or privilege to do so in accordance with the provisions of section 164, supra, of our Constitution its presence in the city was by sufferance only, and its rights only those of a temporary licensee with the corresponding right of the city to revoke the privilege or license at any time—in other words, that the conducting of its business within the city was by virtue of no property right, but only after the manner of a mere temporary licensee, and, being so, the city had the right to, not only revoke the license at any time, but also to alter the terms, including charges for the temporary occupancy. It will be remembered that plaintiff obtained no franchise in the manner required by the constitutional section, supra, and throughout its operations within the city of Elizabethtown it has been only a licensee by sufferance of the city. For the two reasons mentioned the court properly refused the injunction against prosecutions of plaintiff for its failure to comply with the ordinance requiring the payment of an annual license fee of $100, and we are without authority to disturb the judgment on the original appeal, upon the urged ground that the city was without authority to enact it.

But it is insisted that the penalty provided for its violation is invalid, because of its severity, and for that reason the entire ordinance is invalid; but with that conclusion, though conceding the invalidity of the penalty for any cause, we cannot agree. If the penalty cannot for any reason be enforced, that fact would only nullify the section of the ordinance imposing it, and could not possibly affect its other sections, providing for the annual license. However, neither plaintiff's petition nor any pleading filed by it made any attack upon the ordinance upon the ground of excessive or illegal penalties. The only attack made in such pleadings was that the ordinance was invalid, because the city had no authority to prescribe for and collect the annually imposed license fee, and for that reason the validity of the penalty for refus-

ing to pay the license fee is not presented on this appeal, and, of course, is not determined, but may hereafter be questioned in such maner as plaintiff may see proper.

■ In support of the contention that the rate-fixing ordinance was and is invalid it is contended that the city was without authority to enact it under section 3490 of our present Statutes (being a part of the charter of cities of the fourth class to which Elizabethtown belongs) until the amendment to that section, which was enacted in 1918, and being chapter 71, p. 378 of the Session Acts of that year, and that the amendment so attempting to confer such authority upon fourth class cities violated the provisions of section 51 of our Constitution and was and is void. But we deem it unnecessary to discuss or dispose of that contention, since the invalidity of that amendment, if it be so, was cured by chapter 133, p. 398 of the Acts of 1922, which is an independent act, the title to which says: "An act conferring additional powers upon the legislative body or governing authority of cities of the fourth class." It does not purport to be amendatory of any prior statute or section thereof, and we have held in numerous cases that such a statute with the same character of title, although it in effect amends another statute or section thereof, is valid and does not conflict with section 51 of the Constitution, since the act is not within its purview, and it is not essential that the act set out in full the statute or section that it impliedly amends.

However, we had the question as now presented before us in the case of East Tennessee Tel. Co. v. Board of Councilmen of the City of Frankfort, 141 Ky. 588, 133 S. W. 564, and the company there involved was only a licensee without a valid franchise, as is true with plaintiff as hereinbefore pointed out, and we held that it was incompetent for the city to impose a rate-regulating ordinance upon one so occupying its streets and conducting its business within the corporate limits. In the course of the opinion we said: "The council has not as yet revoked the permission and until it is revoked, the grantee is rightfully in possession, and cannot be fined for doing business without buying a franchise or for charging more for its phones than is allowed to a purchaser of such a franchise." The court therefore rightfully enjoined the prosecution of plaintiff for violating the rate-fixing ordinance upon the charges already preferred, or from instituting future ones, and which ruling is conceded to be correct in brief of counsel for defendants.

784

■ Counsel for defendants, however, strenuously argues that the contract above referred to between the city and the Gainsboro Telephone Company authorized the city to fix the rates as contained in the contested ordinance, since it was agreed in that contract (as is contended) that such right was reserved by the city and agreed to by that telephone company. However, plaintiff was not a party to that contract, and, of course, is not bound by its obligations and stipulations. In avoidance, however, of the latter statement it is contended that at the time the contract was entered into the Gainsboro Telephone Company had acquired a large amount, and perhaps the majority of, the stock of plaintiff, and that the contract was in reality made for its benefit. If the first part of that avoidance—i. e., that the Gainsboro Telephone Company or its stockholders had acquired a majority of the stock of plaintiff—should. be accepted as true, then it did not have the effect of consolidating or unifying the two companies, as we have frequently held, and which is a doctrine of universal recognition. There is no testimony to prove that the contract was in reality entered into for the benefit of the plaintiff, Hardin County Kentucky Telephone Company, and which is essential to sustain the second avoiding fact.

However, if it were otherwise, and the facts were such that plaintiff would be bound by the obligations and stipulations contained in that contract, then under the proof heard in the cause the city was without authority to fix the rates as contained in the attacked ordinance. That contract obligated the Gainsboro Telephone Company to "respect and obey all ordinances now in force regulating the . . . rates, charges, . . . and shall render itself amenable to all reasonable ordinances *hereinafter* enacted relating to and regulating the *conduct of the business* of telephone companies in this city. (Our emphasis.) The rate-fixing ordinance here involved was not an existing one at that time and was not enacted until nearly six months thereafter. Its binding force under the contract, therefore, is to be measured by the promissory obligations to observe future enacted ordinances "relating to and regulating the conduct of the business of telephone companies in this city." It is doubtful if that language includes a rate-fixing ordinance, or any other than mere regulatory ones relating to the conduct of the business. But, however that may be, the contractual obligation was to observe only *"reasonable"* ordi-

nances *hereinafter* enacted, and if the language relating to such future ordinances is broad enough to include rate-fixing ones, then the rates, in order to be obligatory upon the telephone company, who was a party to the contract, must be *reasonable*. It is the law everywhere that in all instances wherein the power to fix rates exists they should not be so unreasonably low as to deprive the operator of the utility to which they apply of a reasonable profit on his investment. Mr. Cox testified in this case that it would not only be impossible to realize a profit at the rates fixed in the attacked ordinance, but that it would result in actual loss. That testimony is nowhere denied in the record, and, of course, must be accepted by us as true. So that in no aspect of the case may defendants insist upon the enforcement of the rates fixed in the ordinance herein attacked.

We therefore conclude that the court correctly disposed of the issues involved in the case, and the judgment is affirmed both on the original and cross appeals.