## City of Ashland et al. v. Fannin et al.

(Decided Dec. 3, 1937.)

JOHN T. DIEDERICH, JOHN STANLEY and PORTER M. GRAY for appellants.

HANNAH, VAN SANT & McKENZIE for appellees.

OPINION OF THE COURT BY JUDGE STITES—Reversing in part and affirming in part.

The appellee, C. E. Fannin, doing business as Blue Ribbon Lines, is a resident and taxpayer of the City of Ashland. He is likewise the owner and holder of a certificate of convenience and necessity issued by the Director of Motor Transportation of the state of Kentucky. Under his certificate, appellee operates a motorbus line from the works of the American Rolling Mills in Boyd county, near the Greenup county line, through the City of Ashland to a point near the Midland and Atlantic bridge in the city of Catlettsburg. Appellee claims a right, by virtue of his certificate, to receive and discharge passengers in Ashland, and at all intermediate points along the route described above. He brought this suit not only as the holder of a certificate of convenience and necessity, but also as a taxpayer, against the City of Ashland, and various of its officials to enjoin the city from "unlawfully granting annual franchise rights to jitney bus operators authorizing the operation of motor vehicles for hire between fixed ter-

272

mini, over and along the route described in his certificate." The city, by a counterclaim, undertook to enjoin the operation of appellee's motorbusses over its streets. The chancellor sustained the prayer of the petition and enjoined the city from granting licenses to jitney bus operators, and sustained the prayer of the counterclaim to the extent that he enjoined appellee from receiving passengers within the corporate limits of the city and discharging the same passengers within the city limits under the authority claimed by virtue of the certificate of convenience and necessity. In other words, the city is enjoined from licensing jitney busses, and the appellee is enjoined from carrying local traffic within the City of Ashland. The city has prosecuted this appeal from so much of the judgment as is against it, and also so much as fails to give it all of the relief asked, and appellee Fannin has prosecuted a cross-appeal from so much of the judgment as is against him.

Briefly stated, the questions for determination are: (1) Is the plaintiff (appellee) entitled to bring this suit? (2) May the plaintiff carry local passengers for hire within the corporate limits of the City of Ashland? (3) Is the ordinance of the City of Ashland undertaking to license the operation of jitney busses in violation of sections 163 and 164 of the Constitution?

The chancellor sustained the right of appellee to maintain this action in his capacity as a taxpayer, basing his conclusion upon the decisions of this court in People's Transit Company v. Louisville Railway Company, 220 Ky. 728, 295 S. W. 1055, and Merchants' Police & District Telephone Company v. Citizens' Telephone Company, 123 Ky. 90, 93 S. W. 642, 29 Ky. Law Rep. 512. In the view which we have taken of the case, it is unnecessary to do more than state that we are of the opinion that the decision of the chancellor was correct in this particular.

Appellee applied to the Commissioner of Motor Transportation for a certificate of convenience and necessity, in accordance with the provisions of chapter 112 of the Acts of 1926, as amended by chapter 104 of the Acts of 1932, chapter 103 of the Acts of 1934, and by chapter 64 of the Acts of 1936. The act as it now stands is incorporated in the Kentucky Statutes, 1936 Edition, under sections 2739j-1 to 2739j-97, inclusive. In 1936, the Commissioner of Motor Transportation issued appellee a certificate which, among other things, under-

took to grant him the privilege to receive and discharge passengers over and along Winchester avenue in the City of Ashland, and at all intermediate points along the route of Winchester avenue within the city limits.

Appellee insists that the commissioner was authorized to issue such a permit under the act, and that the authority thus conferred upon him does not contravene sections 163 and 164 of the Constitution, especially so long as Ashland has not granted a valid license or franchise to a bus company to operate busses on Winchester avenue.

This argument, of course, assumes that the licensing of jitney busses is void because in violation of section 164 of the Constitution.

The contention requires a review of the various acts of the General Assembly authorizing the regulation of motor vehicle passenger transportation companies. The first act bearing on this subject was chapter 112 of the Acts of 1926. The provisions of this act differ materially from its terms as now amended. It is unnecessary to set forth the pertinent portions of the 1926 act, because in Monmouth St. Merchants' Bus Association v. Ryan, 247 Ky. 162, 56 S. W. (2d) 963, we held that this act conferred no jurisdiction upon the Commissioner of Motor Transportation to issue certificates of convenience and necessity to motor vehicle passenger transportation companies operating wholly within the limits of any city or wholly within the limits of contiguous cities. Appellee concedes that, unless the 1926 act has been changed, the certificate issued to him by the commissioner, undertaking to give him the right to receive and discharge passengers along Winchester avenue within the city limits of Ashland, would be ineffective because the commissioner would be without power to issue such a certificate. He asserts, however, that the commissioner has the power now to grant such privileges by virtue of the various amendments to the original 1926 act.

As already pointed out, the 1926 act has been amended in various particulars by chapter 104 of the Acts of 1932, chapter 103 of the Acts of 1934, and chapter 64 of the Acts of 1936. The section of the act of 1932 pertinent to the issue now before us was incorporated in the 1933 Supplement to the Statutes as section 2739j-94. That section was again amended by the

act of 1934, and again by the act of 1936, and is now incorporated in the 1936 Edition of the Statutes under the same number, to wit, section 2739j-94. Appellee's certificate of convenience and necessity was not issued until 1936. It is unnecessary to consider, therefore, the provisions of section 2739j-94 as established by the act of 1932. The section was changed materially by the act of 1934. The section as it read after the 1934 amendment (chapter 103) provided, in substance, that there should be exempt from the provisions of the act as a whole motor vehicles for hire operating within the limits of a city or incorporated town, but then provided that the operation of any such motor vehicle "operating over a regular route wholly within the limits of any city or within three miles of its limits and not under a franchise granted by the city" could apply to the commissioner for a certificate of convenience and necessity. The section as it thus stood was changed materially by chapter 64 of the Acts of 1936. As amended by this latter act, this section exempted from the provisions of the act motor vehicles for hire operating exclusively within the limits of a city, "Provided however, that the operation of any such motor vehicle for the carriage of passengers, operating *between* any city or incorporated town at a point or points within ten (10) miles of the limits thereof, and over regular routes or between fixed termini, may apply to the commission for a certificate."

Clearly, the 1934 act undertook to authorize the commissioner to issue such a certificate as was issued to the appellee. Just as clearly, this claimed power was taken away from the commissioner by the 1936 act, which granted the power to issue certificates only where the operation of a motor vehicle was *between* a city and a point within ten miles of its limits. The difference in the language employed in the two acts is striking. But one construction can be given the word "between" as used in the 1936 act, when it is viewed in the light of the provision of the 1934 act. By the 1934 act the General Assembly gave the commissioner the power to issue certificates for purely local urban operations, while, by the 1936 act, the power to issue certificates was restricted to operations *between* a city or town and distances within ten miles of the limits of such city or town. We conclude that the 1936 act had the effect of removing the claimed jurisdiction of the commissioner to issue a certificate covering operations exclusively

within the limits of·a city or incorporated town. This conclusion makes it unnecessary to consider whether or not the claimed power of the commissioner would in fact be void because in contravention of sections 163 and 164 of the Constitution. It follows, however, that the chancellor did not err in granting the injunction asked in the counterclaim.

We are thus brought to the question principally presented on the direct appeal, namely, whether or not the licensing of the operation of the jitney busses on Winchester avenue by the City of Ashland is contrary to the provisions of sections 163 or 164 of the Constitution. This so-called license is in the form of an ordinance levying an annual tax on jitney busses operating within the city limits of Ashland. Section 163 of the Constitution provides, in substance, that "no street railway, gas, water, steam heating, telephone, or electric light company, within a city or town," shall be permitted to construct its fixtures upon the streets of any city or town without first obtaining the consent of the municipal authorities. Section 164 of the Constitution provides:

"No county, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids. This section shall not apply to a trunk railway."

These sections of the Constitution must be read and construed together. Clearly, section 163 prevents the imposition of fixtures upon the streets without the consent of the city or town affected. It does not provide the manner in which that consent is to be obtained.

Section 164 is not by its terms limited to the specific type of utilities enumerated in section 163. Its language is sufficiently broad to include the granting of franchises or privileges to any utility the operation of which would require a franchise within the meaning of our laws. However, section 164 is directed simply to the issuance of franchises or licenses for a term of

years. It does not by its terms deal with utilities operating by sufferance where that operation is revocable at any time by the municipal authorities.

Appellee insists that the cases of Merchants' Police & District Telephone Company v. Citizens' Telephone Company, 123 Ky. 90, 93 S. W. 642, 29 Ky. Law Rep. 512; Hilliard v. George G. Fetter Lighting & Heating Company, 127 Ky. 95, 105 S. W. 115, 117, 31 Ky. Law Rep. 1330; People's Transit Company v. Louisville Railway Company, 220 Ky. 728, 295 S. W. 1055, 1058, control the case presented here, and require that we hold that the City of Ashland cannot license the operation of jitney busses within its city limits. This necessitates a review of each of these three cases to determine just what each case held.

In the Merchants' Telegraph Company Case, the Citizens' Telephone Company, as the holder of a valid franchise from the city of Covington to operate a telephone system, sued the Merchants' Company to enjoin it from operating a similar plant in Covington on the ground that the license obtained by the latter was not granted in accordance with the terms of section 164 of the Constitution. The license there granted purported to be without limit as to time, except as the city council might see fit to revoke it. The trial court granted the injunction prayed, and we affirmed. It is to be observed, however, that in that case the suit was one by a utility owning a valid franchise to prevent the competition of another utility which held no such franchise, and that the Merchants' Company was undertaking under its license to place fixtures in the streets of a *permanent* nature.

The Hilliard Case was a suit by a citizen and taxpayer of Louisville to enjoin the board of public works from granting to the Fetter Company a permit to construct *permanent* fixtures in the streets of Louisville for the purpose of furnishing electric and steam power service to the citizens. In that case the city council had passed an ordinance authorizing the board of works to issue such permits annually upon the terms and conditions set forth in the ordinance. This court, in an opinion by Judge Carroll, a member of the Constitutional Convention, held that the fixtures which it would be necessary for the Fetter Company to erect were of a permanent nature, and that it was obvious that the com-

pany would not undertake the erection of such permanent structures unless it was intended that its operations would be of a *permanent* nature, saying:

> "There is a wide difference between a temporary and a permanent use, and whether a franchise or privilege is granted or obtained for one or the other is largely a question of fact, to be determined by the nature, extent, and character of the use for which the street is desired."

Because of the permanency of the structure involved and the permanency of the operations intended, it was held that the attempted licensing was a plain effort to avoid the provisions of sections 163 and 164 of the Constitution, and was void.

In the People's Transit Company Case, the Louisville Railway Company brought suit to enjoin the People's Transit Company from operating jitney busses in the city of Louisville. The Railway Company sued not only as a taxpayer, but also as the owner of a valid franchise to furnish transportation service within the city. The Transit Company held no such franchise, but was operating as a licensee and was paying taxes on that basis. This court held that the Railway Company, as the owner of a valid franchise to furnish transportation service, could enjoin similar operations by the Transit Company, since it had not obtained a franchise. The basis of the decision was that a utility which owned a franchise granted in accordance with the terms of sections 163 and 164 of the Constitution could prevent the competition of another utility which had not obtained a privilege of equal dignity from the municipal authorities. In the course of that opinion, it is said:

> "We are convinced that the all-inclusive language of section 164 of the Constitution is not only broad enough to, but that its terms do, include all intraurban franchises conferring the right of an extraordinary or privileged use of the streets or other public ways of the city, regardless of the means employed in rendering the service, provided such user is one of the *permanent* nature contemplated by that section. That the use of motor vehicles on public streets and highways for the transportation of passengers between fixed termini, etc., is the exercise of a franchise, there can be no doubt."

These three cases establish (1) that where perman-

ent structures are imposed upon the streets of a municipality, and as a matter of fact the operation of the utility must necessarily be of a permanent nature, then an attempt to license such an operation without the sale of a franchise as required by section 164 of the Constitution is void and may be enjoined at the instance of a taxpayer; and (2) that a utility which holds a valid franchise thereby obtains a special property right which entitles it to prevent interference or competition with the privileges thereby given, where the person competing or interfering with the privilege has not acquired a franchise as required by section 164.

Throughout all these cases the idea of permanence in the construction or operation seems to be the controlling factor in determining whether or not a franchise must be obtained. Of course, the permanence of the operation may be determined as a matter of fact from the character of the fixtures placed in the streets, or it may be determined as a matter of law from the character of the grant which the municipality undertakes to make. Some light is thrown on the rule regarding the permanency of the grant by cases which have arisen where a utility is operating through mere sufferance.

Thus, in Cumberland Telephone & Telegraph Company v. Calhoun, 151 Ky. 241, 151 S. W. 659, the Telephone Company sought to enjoin the imposition of a license tax against it by the city of Calhoun on the theory that it was a franchise-paying corporation. This court, in an opinion by Judge Carroll, held that, since the Telephone Company had no valid franchise from the city of Calhoun, the city had the power to impose a license tax. In Hardin County, Kentucky Telephone Company v. City of Elizabethtown, 227 Ky. 778. 14 S. W. (2d) 162, 164, a similar question was considered. The court held that Elizabethtown had the power to impose a license tax against the Telephone Company because it had no valid franchise to operate in the city. After referring to the Cumberland Telephone Company Case and various other decisions, the court said:

"In them and others referred to we held that where the operator of a public utility within a municipal corporation had not obtained a franchise or privilege to do so in accordance with the provisions of section 164, supra, of our Constitution

its presence in the city was by sufferance only, and its rights only those of a temporary licensee with the corresponding right of the city to revoke the privilege or license at any time—in other words, that the conducting of its business within the city was by virtue of no property right, but only after the manner of a mere temporary licensee, and, being so, the city had the right to, not only revoke the license at any time, but also to alter the terms, including charges for the temporary occupancy. It will be remembered that plaintiff obtained no franchise in the manner required by the constitutional section, supra, and throughout its operations within the city of Elizabethtown it has been only a licensee by sufferance of the city."

Other cases to the same effect are Adams Express Company v. Boldrick, 141 Ky. 111, 132 S. W. 174, and Town of Hodgenville v. Gainesboro Telephone Company, 237 Ky. 419, 35 S. W. (2d) 888.

The operation of the jitney busses in Ashland requires no permanent structures in the streets. It is true, as held in the People's Transit Company Case, that the operation of the busses over regular routes and between fixed termini is an extraordinary use of the streets, but it is not of a *permanent* nature. We do not construe the licensing ordinance as granting a privilege for any fixed term, or as giving more than a mere right by sufferance to use the public highways.

Furthermore, we do not here have the situation presented of the owner of a valid franchise seeking to protect the rights which he has purchased. As pointed out above, appellee acquired no right to carry local traffic within the city limits of Ashland by virtue of his certificate of convenience and necessity.

It is argued that the operation of jitney busses is intended to be one of a permanent nature. Obviously, there is nothing permanent about the mere sufferance of the business carried on by the jitney bus operators. If the operators are willing to continue their business subject to the mere whim of the city, that is a chance which they alone assume, and we can find nothing in the Constitution from which we can spell out an inhibition against this method of doing business.

The question of the right of the city absolutely to enjoin the use of its streets by appellee is not argued

in briefs, and we assume that appellant has found no merit in the contention, and has waived it. Certainly, it is difficult to see wherein the judgment of the trial court could be erroneous in this particular.

The judgment is reversed on the direct appeal for proceedings consistent with the views herein expressed, and is affirmed on the cross-appeal.