## Spur Distributing Co. v. Husbands.

Jan. 13, 1939.

WHEELER & SHELBOURNE for appellant.

L. B. ALEXANDER for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

Appellant, The Spur Distributing Company, a corporation, engaged in the retail sale of gasoline and the operation of gasoline filling stations, has appealed from a judgment of $800 rendered against it in the McCracken Circuit Court in favor of appellee for breach of a lease contract entered into between the parties whereby appellee leased a certain lot in the city of Paducah, Ken-

tucky, to appellant, to be used in its business as a gasoline filling station.

The lease contract was entered into in November, 1930, for a period of five years with the right or option of renewal of same by appellant for an additional five year period. For the original or first five-year period appellant was to pay appellee a rental of $83.33 1/3 per month, or $1,000 a year, and in the event of renewal or extension of the lease the rental was to be $100 per month or $1,200 a year. At the end of the first five-year lease, or in the fall of 1935, appellant exercised its right or option of renewal and did renew same for an additional five years at a rental of $100 per month. The lease contained the following clause:

"It is the Lessee's purpose to use said property as a service or distributing station, filling its tanks through pipe lines directly from tank cars to be placed on the adjacent railroad track, and if during the period of this lease or any extension thereof Lessee's plan of operation, namely, of unloading the whole contents of a tank car into said station, should be prevented or forbidden by any law, ordinance or other regulation, or there should be any change in the location or grade of the street or streets bounding said property that could or might prejudicially affect its ingress or egress or the convenient use of it for the purpose of a service and distributing station, or if any part of the premises should be taken under condemnation proceedings, or if the railroad company should discontinue such track from which the unloading is being made, or the right to use it or to run pipe lines across its property for such purpose, Lessee shall have the right to terminate this lease at the end of any month after such plan of operation is so prevented or forbidden, or after such change or condemnation is begun, or such use by the railroad is discontinued, upon sixty days' prior written notice to Lessor; provided, however, that this right to terminate the lease shall expire at the expiration of six months after any such change or condemnation has been completed, or after such use by the railroad shall be discontinued. If the lease shall be terminated under this clause, Lessee shall vacate the property· and shall have the same right to remove

its buildings, tanks, pipe lines, equipment, etc. that it would have upon the expiration of the lease by lapse of time.''

The leased property on which appellant's gasoline station was constructed is located on the corner of Jefferson and 10th Streets in the city of Paducah, Kentucky, being bound on the south by Jefferson Street; on the west by 10th street. On the west side of 10th street opposite appellee's property, is located the property of the West Kentucky Coal Company, which is joined on the west by the main line track of the C. St. L. & N. O. R. Company, with a spur track extending in a southerly direction to the plant of the West Kentucky Coal Company property, on which spur or side track railroad cars are loaded and unloaded. Appellant made arrangements with the West Kentucky Coal Company for a rental of $10 per month, to unload its, appellant's, oil tank cars from the West Kentucky Coal Company siding. In order to unload the contents of a tank car into appellant's tanks at its station on its leased property, it was necessary to run a pipe line from its tank or station to the spur track or siding on the West Kentucky Coal Company property, and 10th street separating the two properties, it was necessary to extend this line under 10th street. This was the plan of operation during the first five year period and existed at the time the lease was renewed.

However, appellant being unable to agree with the West Kentucky Coal Company on a rental for the renewal five year period of the lease it then applied to the City Commissioners for a permit to install a gas line under the grass plot of Jefferson Street between the curb and sidewalk extending west of the railroad, and thus continue its plant or operation as then located on appellee's property. The permit was granted but before the line was installed the City Commissioners revoked the permit and notified appellant not to install its pipe line on Jefferson Street. Appellant then entered into negotiations with the U. S. Tobacco Company which owned property north of the alley on the north side of appellee's property where appellant's station was located, for a lease with the Tobacco Company to use its spur track by extending a line from it across the alley to its station on appellee's property. Appellee agreed to lease additional space to appellant for the construc-

tion of the pipe line from the U. S. Tobacco Company property through her lot, but the U. S. Tobacco Company demanded a rental of $500 per year for the use of its siding, which sum appellant was unwilling to pay. It appears that there was some question raised as to whether or not the alley separating appellee's property from the U. S. Tobacco Company property was a public or private one, and if of the former class, there was a question as to whether or not the city authorities would allow appellant to construct its pipe line under the alley. We must say, however, that the evidence, including a deed dedicating the alley for the sole use of abutting property owners, strongly indicates that the alley was a private one, and since appellant had the permission of both abutting property owners, U. S. Tobacco Company and appellee, to construct the line under the alley, a permit from the city to do so was not necessary, and the only obstacle being left was the amount of the rental demanded by the U. S. Tobacco Company for the use of its railroad siding and premises.

On June 23, 1936, the City of Paducah, through its Board of Commissioners, passed a resolution or order notifying or directing appellant to remove its pipe line from under 10th street, which line, as we have already pointed out, was the original method of piping gasoline from the railroad siding on the West Kentucky Coal Company property to appellant's station on appellee's property. Appellant was directed to remove the pipe line within five days and having failed to do so, it appears that the city authorities strenuously insisted that appellant comply with its orders. In the meantime appellant made application to the Mayor, City Manager and Corporation Council for a franchise which would enable it to use the street and other public ways of the city in constructing pipe lines thereunder, and thereby enable it to continue the operation of its business, but the city authorities took no steps or action to advertise for sale a franchise for that purpose. On July 8, 1936, appellant purchased, or contracted to purchase a new location for its tanks and operation of its business, on the south side of Jefferson Street for which it paid $2,500. And on or about the same day it notified appellee that because of the action of the City Commissioners in ordering it to remove its pipe line from under 10th street, and pursuant to the provisions of the quoted

clause of the lease, it had elected to terminate the lease. However, on August 26, 1936, the City Commissioners revoked or set aside the order of June 23rd, ordering the pipes removed from under 10th street. But it is to be noted that this was after appellant had exercised its right under the lease to terminate it, and had purchased land for a new location. The evidence is not clear as to the exact date of the removal of the pipes from under 10th street, but it does appear that this occurred before August 26th. P. B. Slover, manager for appellant, testified that the pipe line was removed from under the street before August 26th, but upon being asked the exact date of the removal he was unable to state the day of the month, but stated positively that it was before August 26th. However, he was later recalled for further cross-examination and testified that papers in his files at the office in Nashville, Tennessee, disclosed that the pipe line was removed from under 10th street on August 24th, but he did not produce the records, nor is it shown who made the records or when they were put in the files, or otherwise establish the exact date except testifying from papers he found in the files. The court ruled that this evidence was incompetent. However, be this as it may, we do not think that the exact date of the removal of the pipe is material, since appellant had exercised its right to terminate the lease and had pur- chased property for a new location while the order of June 23rd was in force.

Appellee refused to recognize appellant's right to terminate the lease and filed this suit on the 5th day of October, 1936, asking judgment against appellant for the sum of $100 rent for the month of October—same being payable in advance. Before the suit was tried in the lower court appellee amended her petition and sued for $800 accrued rents—for which sum judgment was rendered.

Appellant filed its answer in which it pleaded as a defense the order of the City Commissioners of June 23rd, 1936, ordering its pipe line removed from under 10th street, and the quoted provision of the lease. Appellee filed demurrer to the answer which was over- ruled, and thereupon she filed her reply in which she pleaded in substance that the order of the City Com- missioners of June 23rd had been revoked and set aside, and that appellant had the right to continue the use of

its lines under 10th street, by paying the West Kentucky Coal Company $15 per month for the use of its premises, and further that appellant could have made arrangements with the U. S. Tobacco Company to use its siding and premises for the unloading of its tank cars and pipe its oil to its plant, and the only reason why it refused to do so was because it was unwilling to pay the U. S. Tobacco Company $500 per year rental. She further asserted that the action of the City Commissioners in ordering the pipe line removed from under 10th street was not the real cause of appellant terminating or attempting to terminate its lease, but in fact it sought to do so because it could save money by purchasing a new site at the price it paid for it, instead of paying to appellee $100 per month under its lease with her and paying the rentals asked by either the West Kentucky Coal Company or U. S. Tobacco Company.

The issues were completed and the evidence taken and upon trial of the case the court entered separate findings of fact and law. The court found as a matter of fact, that appellant was not prevented or forbidden by law, or ordinance or other regulation from operating its filling station. The court further found that appellant could have made arrangements with the U. S. Tobacco Company to use its spur track and could have run its pipe line from that track under the alley to its plant on appellee's property and that the alley was a private one and no permission from the City to cross it was necessary. The court found as a matter of law that appellant was not prevented or forbidden by law, ordinance, or other regulations from operating its filling station and was indebted to appellee in the sums and amount sued for and rendered judgment accordingly.

The first question to be determined is the effect of the order of June 23rd, 1936, ordering appellant to remove its pipe line from under 10th street. There is no escape from the conclusion that under the quoted provision of the lease that order gave appellant the right to terminate the lease. After the order was made and before it was revoked by the order of August 26th, 1936, it appears that appellant resorted to various alternatives and efforts to continue the operation of its business on appellee's property and thus continue its lease with her. It is shown by record evidence, and not disputed, that while the order of June 23rd was still in force appellant

exercised its right to terminate the lease and had purchased a new site or location for its tanks at a cost of $2,500. Once appellant had elected to terminate the lease we do not think that the order entered by the City Commissioners August 26, 1936, revoking the previous order of June 23rd, revived or reinstated the lease so as to compel appellant to reinstate or recognize the continuance of the lease. It would be unreasonable to presume that the quoted provision of the lease providing a cause or right for its termination, contemplated that if those things occurred and appellant exercised its right to and did terminate the lease, then if the grounds of termination should be removed or otherwise become non-existent at some future date, the lease would be automatically revived.

It is insisted for appellee that the real cause of the termination of the lease was that appellant conceived the idea that it would be a money-saving proposition for it to purchase a site of its own rather than pay appellee the rental under the lease contract and in addition thereto to pay the West Kentucky Coal Company or the U. S. Tobacco Company the rentals demanded by them.

Conceding, arguendo, that appellant may have welcomed the opportunity to terminate the lease, yet, since it had a legal right to do so the court cannot inquire into its motive.

At the time appellant elected to and asserted its right to terminate the lease the only railroad siding available for the unloading of its oil was that of the U. S. Tobacco Company at a rental of $500 per year, which sum appellant deemed unreasonable. Appellee insists, and the court so adjudged, that rather than terminate the lease, appellant should have paid the rental or price demanded by the U. S. Tobacco Company. But we do not think that under the language employed in the quoted clause of the lease, "if during the period of this lease or any extension thereof Lessee's *plan of operation,* namely, of unloading the whole contents of a tank car into said station, should be prevented or forbidden by any law, ordinance or other regulation, * * * Lessee shall have the right to terminate this lease * * *" (our italics), means that if these conditions or events should arise, still appellant should not terminate the lease so long as there is any possible alternative, even to the ex-

tent of paying any price demanded for rignts-of-ways or other facilities as a means of continuing the lease in force. If such had been contemplated by the parties, evidently the contract would have so provided. In the absence of any such provision expressed or necessarily implied, the court is unauthorized to interpolate it into the contract.

The happening of any of the events or conditions mentioned in the quoted clause of the lease is all that was necessary to authorize the appellant to terminate it, and these events having occurred, very clearly appellant acted within its legal right when it terminated it.

It may be an unfortunate situation for appellee to have the lease terminated, all of which was brought about without any fault of hers. Nor can it be said that appellant is to be blamed for exercising its legal right to terminate the lease. It appears that the city authorities exhibited an unwilling attitude toward appellant in reference to the use of the city streets in the operation of its business. After appellant's pipe line had been in use under 10th street for more than five years, the city authorities ordered it removed. Later they granted appellant a permit to extend its pipe line from its plant to the railroad over a different route, but before this was done the permit was revoked and this privilege refused. Appellant then asked the city authorities to take the necessary steps for a sale of a franchise in order that it, appellant, may have an opportunity to purchase the franchise and thereby enable it to use the public ways of the city for the construction of its pipe lines without taking the hazardous risk of operating under a mere permit which is subject to revocation at any time at the pleasure of the city authorities (Section 3094, Kentucky Statutes, Sections 163 and 164, Constitution of Kentucky; Cumberland Tel. & Tel. Company v. City of Calhoun, 151 Ky. 241, 151 S. W. 659; East Tennessee Tel. Company v. Paris Electric Company, 156 Ky. 762, 162 S. W. 530, Ann. Cas. 1915C, 543), but it appears that the city authorities took no action in regard to the sale of the franchise. Thus, the precarious and uncertain situation of appellant is obvious. If after the revocation of the order of June 23rd, ordering the removal of the pipe line under 10th street, appellant should have rescinded its election to terminate the contract and attempted to continue the operation of its business under the previous

method, still it had no assurance that it could continue that method during the lifetime of the lease, or, indeed, any time, since the city authorities could, and in the light of their past conduct, probably would, have again ordered the removal of the pipe line, thus leaving appellant in the same situation it was at the time it elected to terminate the lease. Whether the city authorities acted prudently or imprudently, we need not determine; nor do we mean to criticise them for their actions, since they acted within their legal rights. We mention these matters only in response to appellee's argument that appellant did not act in good faith in terminating the lease because it had been ordered to remove its pipe line from under 10th street. In the situation and circumstances, we do not doubt that any prudent business person would have pursued the same course chosen by appellant.

For the reasons stated the judgment is reversed and remanded for proceedings consistent with this opinion.