H. Jack HANNA and Bobbette Hanna, Appellants,

v.

SAFEWAY STORES, Incorporated, Appellee.

No. 14202.

United States Court of Appeals Ninth Circuit.

June 20, 1955.

Rehearing Denied Sept. 29, 1955.

---

Jennings, Engstrand & Henrikson, La Mesa, Cal., for appellants.

James W. Archer, Ward W. Waddell, Jr., Alfred Lord and John M. Cranston, San Diego, Cal. (Gray, Cary, Ames & Frye, San Diego, Cal., of counsel), for appellee.

Before STEPHENS, FEE and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

H. Jack Hanna, Pontiac automobile dealer in La Mesa, California, in 1951 "lost his lease" on six lots (hereinafter called the Safeway lots) which were a portion of his open air used car lot. The Safeway lots are located at a corner diagonally across the intersection from Hanna's garage, the ground under which is owned by Hanna and his wife, Bobbette, who joins him as plaintiff and appellant.

In 1948 Hanna obtained his lease, the source of this diversity litigation, from one Garland Cox, then owner of the Safeway lots.

The lease in its entirety is as follows:

"Land Lease

"This Indenture, made the twenty-first day of February in the year of our Lord, one thousand nine hundred and forty-eight. Witnesseth: That Garland Cox of the County of San Diego, State of California, lessor, does hereby lease, demise and let unto H. Jack Hanna of the County of San Diego, State of California, the following property to wit: Six (6) Lots numbered 8, 9, 10, 11, 12 and 13, Sunnyside Addition La Mesa, San Diego County, California.

"To have and to Hold, for the term of five (5) years to wit: from the first day of April, 1948, to the first day of April, 1953, yielding and paying therefor the rent of twenty-four thousand ($24,000) dollars, lawful money of the United States of America; and the said lessee promises to pay the said rent in such monthly payments and as follows: to wit: Eight hundred ($800) in cash receipt of which is hereby acknowledged, representing the first and last months' rental, and four hundred ($400) monthly thereafter.

"This entire Lease is subject to ninety (90) days cancellation upon written notice by Lessor of intention to build a major structure or to sell for immediate building purposes.

"This Lease may be extended for an additional five (5) years at the option of Lessee subject to same con-

ditions as set out herein, terms to be mutually agreed and Lessee is understood to have first option. It is understood and agreed that Lessee commence at once installing improvements in the form of grading, black-top and lighting equipment to a total not to exceed $4500.00. Actual cost of such improvements to be certified by Lessee to Lessor and the total expenditure covered by these improvements shall be deducted from Lessee rental payments at the rate of $100.00 per month until paid off. In the event Lessor shall exercise the ninety (90) day cancellation clause set out above, any unpaid amount remaining of Lessee's improvement expenditures shall be paid by Lessor in cash at time of cancellation of Lease.

"It is understood and agreed that the essence of this Lease is the combined interest of Lessor and Lessee in proper and efficient development of the property described herein for the mutual benefit of the owners of this and immediate surrounding property, and further that Lessee is particularly interested in retaining Lots 8 and 9 on University Avenue for a Used Car Sales lot in the event of Lease cancellation. This paragraph merely recognizes a moral obligation and is not intended to be legally binding or to supersede any of the foregoing conditions.

"Lessee agrees to hold Lessor harmless against all comers in case of litigation arising from any acts of Lessee or his employees. Lessee further agrees to assume any tax increase occasioned by structures or improvements placed on this property by Lessee, other than those agreed to herein. Lessor to bear all other property taxes.

"Lessee further agrees to remove any structures promptly and at his own expense at termination of this Lease, and to quit and deliver up the premises to Lessor, or his agent or attorney peacefully and quietly, at the end of the term, in as good order and condition (reasonable use and wear thereof and damages by the elements excepted), as the same are now or may be put into, and to pay the rent as above stated for such further time as the Lessee may hold the same.

"In Witness Whereof, the said parties have hereunto set their hands and seals the day and year first above written.

"Witness their hands and seals this twenty-first day of February, 1948.

> Garland Cox, Lessor
> H. Jack Hanna, Lessee
> M. J. Corby"

On December 12, 1950, Safeway, having succeeded to the rights of Cox in the fee and the lease, gave Hanna a notice to vacate as follows:

"Safeway Stores Incorporated
P. O. Box 3399      Terminal Annex
1925 East Vernon Avenue
Los Angeles 54, California

December 12, 1950

"Registered—Return Receipt Requested

"Mr. Jack H. Hanna
7950 La Mesa Blvd.
La Mesa, California
"Re: L. 2198
SWC La Mesa & University
La Mesa, California

"Dear Mr. Hanna:

"This letter is to advise that we have purchased Lots 8 to 13, inclusive, Sunnyside Addition, La Mesa, and upon which you operate a Used Car Lot.

"Reference is made to that certain lease dated the 21st day of February, 1948, between Garland Cox, lessor, and H. Jack Hanna, lessee, for a term of five years to the 1st day of April, 1953, at a rental of $400.00 per month, said lease covering the abovementioned lots. The third paragraph of the aforesaid lease provides for a 90-day cancellation upon written notice by lessor of intention to build a major structure

or to sell for immediate building purposes.

"This letter is notice to you of the termination of this lease and to demand possession on March 15, 1951. In this connection, rental payments for the balance of your tenancy should be paid to Safeway Stores, Incorporated, P. O. Box 3399 Terminal Annex, Los Angeles 54, Calif.

"Very truly yours,
Safeway Stores, Incorporated
/s/ J. S. Pringle
Realty Manager"

On March 15, 1951, the last day of the 90-day period, Hanna completed vacating the Safeway lots.[1]

Then many months went by and Safeway built no structure upon the lots vacated by Hanna. Instead, on July 1, 1952, it rented the property for a nominal sum to Foster & Kleiser, a billboard company, for advertising signs. This rental is terminable on five days' notice. And we assume as of this date Safeway has not built. Why? The record neither tells us nor suggests an answer. Contrariwise, Hanna and his counsel neither plead nor imply even a suspicion of fraud. This is to the credit of Hanna and his counsel. If bad faith existed or was suspected, we doubt not that Hanna and his attorneys would have asserted it. Nonetheless, bad faith is too often charged without any authority except the wish of him who asserts it.

In their complaint Hanna and wife assert heavy damage and say there was an "express and implied covenant" that if the lease were terminated by notice, a major structure would be constructed on the Safeway lots within a reasonable time. This opinion will assume that the Hannas were hurt financially.

After a pre-trial order, the trial court, following an agreement as to method of procedure, first considered the question of whether the lease of February 21, 1948, was ambiguous. It concluded it

was not. The court implied in law an obligation to give the notice of termination in good faith, which means that at the time notice was given (and we would assume all of the intervening 90 days, too), Safeway must have had an honest intention to build a major structure. The termination clause being thus construed, judgment naturally followed in favor of Safeway. Thereupon, the Hannas appealed to this court.

Sua sponte, this court, during the oral arguments, raised a question as to the sufficiency of the notice to vacate. A second reading of the notice shows it is clumsy. In effect, the notice says, "1. Your lease has a clause in it that we can terminate if we give you 90 days' notice that we intend to build a major structure. 2. Get out." Nowhere does it say that Safeway intended to do anything.

But all the parties have at all times treated the notice as if it had said, "We intend to build a major structure. Get out." Probably we would not be justified in tampering with their construction, but the decision we make on the main issue of the case, as the parties have fought it out, makes it unnecessary to determine if the notice was a good one and, if not, whether plaintiffs lost all rights when they moved out voluntarily on a defective notice.

The Hannas would bolster a little their position herein with the "moral obligation" clause of the lease, which we extract and repeat as follows:

"It is understood and agreed that the essence of this Lease is the combined interest of Lessor and Lessee in proper and efficient development of the property described herein for the mutual benefit of the owners of this and immediate surrounding property, and further that Lessee is particularly interested in retaining Lots 8 and 9 on University Avenue for a Used Car Sales lot in the event of Lease cancellation. This para-

---

1. Lessee's improvements of grading, black-top paving and lighting equipment had all been paid for at the time of termination by Safeway out of deductions from the rent as agreed in the lease.

graph merely recognizes a moral obligation and is not intended to be legally binding or to supersede any of the foregoing conditions."

We hold that clause to be wholly self consuming. Why should we attach some importance to a clause that the parties in their lease specifically say is legally no good and which at the time of writing they seem to imply was inserted solely for adjudication by some "higher court" or possibly the judgment of their San Diego neighbors?

■ California law, of course, is applicable in construing the lease.[2] California possibly leads the nation in the number of codified rules for construing contracts, but most of the rules have no application unless one first finds ambiguity.[3] We find none. Expressly, the contract provides for termination on "notice of intention to build" and does not provide for termination "on condition that the lessor build."

■ Now it is our duty to anticipate what the California courts will do if any identical case reaches them. What covenants, if any, are to be implied? As is so often true, we cannot find the same set of facts in the reported decisions of California. Therefore we must reason from the available cases in California which have some relevancy, applying our best judgment to them.

■ Obviously, we think, California and most jurisdictions would imply a covenant that a notice of termination grounded on intention to build must be given in good faith. We can safely add that intention must continue to exist during the period the notice is running and while the tenancy lasts. Anything short of this mocks decency.

In the ordinary business case, the announced intention to build immediately, granting bona fides, will ordinarily result in the same end as a contract binding one to build. The result of the prior intention customarily will be obtained. Businessmen usually do not put a $400 a month tenant off of a lot to take a negligible sum per month from a billboard agency. A prompt sale or a lease at a higher rent invites suspicion and legal attack, when made after termination under a clause such as we have here.

We think here that the words the parties selected from the English language gave Hanna no more than a right to an honest state of mind on the part of the lessor with respect to the notice to vacate. Were there any suggestion of dishonesty on the part of Safeway we have little doubt that the trial court would have permitted, and rightly so, minute scrutiny of the termination.

■ There being no such suggestion, we must take this as a case where Safeway honestly intended to build a major structure. It gave Hanna notice to vacate. After he vacated Safeway changed its mind. (Apparently, Safeway was no business rival of Hanna.) Why it changed its mind we do not know and we guess we shall never know. But good faith being uncontested, Safeway is not to be forced to compensate Hanna for the lack of words importing a continuing obligation to build which he possibly could have had had he bargained for them.

The conclusion we reach is one that we think flows from the opinion in Lindenberg v. MacDonald, 34 Cal.2d 678, 214 P.2d 5, 14 A.L.R.2d 1436, a case strongly argued by both parties. This we buttress with our impressions of other California cases less closely related plus our own judgment as to what reasoning will appeal to the California courts when, if ever, they get a similar set of facts.

The judgment is affirmed.

2. See California Civil Code § 1635 et seq.

3. Perhaps the code section that comes as close as any to being highly pertinent is California Civil Code § 1638, which reads as follows:
"Ascertainment of intention; language
"Intention to be ascertained from language. The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."

We cannot say the literal words of the contract herein involve an absurdity.