**HINGHAM MANAGEMENT CORP.**

v.

**UNITED STATES.**

No. 219–54.

United States Court of Claims.

Oct. 8, 1958.

William Shaw McCallum, Boston, Mass., for the plaintiff. Vincent R. Brogna, Boston, Mass., was on the brief.

David D. Hochstein, Washington, D. C., with whom was Asst. Atty. Gen. Perry W. Morton, for defendant.

LITTLETON, Judge.

■ Plaintiff, a Massachusetts corporation engaged in warehousing, manufacturing, general real estate management and other activities, sues to recover damages for the alleged wrongful termination by the Navy Department of a lease under which plaintiff leased certain premises from the Navy Department at Hingham, Massachusetts.

Pursuant to court order, the only issue tried and now before the court for determination relates to the right of the plaintiff to recover. Rule 38(c), 28 U.S.C.A.

The plaintiff and defendant executed an Agreement of Lease effective April 3, 1950, for a term of five years, under which the Government leased to the plaintiff the greater part of the Naval Industrial Reserve Shipyard at Hingham, Massachusetts. Article 12 of the lease provided, in pertinent part, as follows:

"Article 12. Termination. This lease may be terminated by the Department [of the Navy] *at any time prior to the expiration of the term hereof:*

"(a) During any national emergency declared by the President or Congress;

" * * * In the event of termination, the Department may at its election relet the whole or any portion of the Facilities for any period equal to, greater than, or less than the remainder of the term of this lease to

any person, for any sum and upon any terms deemed by the Department to be reasonable and satisfactory." (Emphasis supplied.)

On December 16, 1950, the President of the United States declared the existence of a national emergency. In 1953, it was learned that considerable Government-owned property at the shipyard had been removed and apparently sold. On October 29, 1953, while the national emergency was still in existence, the Department of the Navy, having determined that the mobilization potential of the shipyard had been seriously impaired by the losses that had occurred, terminated the lease pursuant to Article 12(a) above in order to prevent further loss of Government property. The shipyard was then leased to other private industrial users on terms substantially similar to those contained in plaintiff's lease. Subsequently, plaintiff's president and two of its employees were indicted, convicted and sentenced to prison for theft and embezzlement of Government property at the shipyard.

As is apparent from Article 12 of the Agreement of Lease, the Department of the Navy retained an absolute and unconditional right to terminate the lease during any period of national emergency as well as the right to relet the shipyard, upon such termination, to whomever it pleased. The sole contingency to the exercise of these rights was the declaration of such an emergency. That contingency had occurred when the Department terminated the lease in the present case.

■ Generally speaking, where the parties to a lease agree that one party is to have an unconditional right to terminate the lease upon the happening of a specified event, and that event occurs, the courts will uphold the exercise of the right of termination regardless of the motive of the terminating party and regardless of the reasons for, or the fairness of the termination. Hightower v. United States, 1935, 80 Ct.Cl. 712; Spur Distributing Co. v. Husbands, 1939, 276 Ky. 521, 124 S.W.2d 463; Hanna v. Safeway Stores, 9 Cir., 1955, 223 F.2d 858; and see cases collected at 137 A.L.R. 362. It is not for the courts to impose restrictions upon the rights reserved by a party to a lease which the parties themselves did not see fit to impose. If the plaintiff in the present case felt that the rights reserved by the Department of the Navy were unfair or inequitable, it should not have agreed to the terms proposed. Having agreed to those terms, it is bound by them.

■ Even if we concede that the right of termination reserved by the Department of the Navy was restricted to its reasonable exercise, or that its exercise was restricted to circumstances bearing some relationship to the national emergency, the Navy Department's action was fully justified. The shipyard in question was considered important to the national defense. Its mobilization potential had to be maintained particularly during a period of national emergency. The plaintiff-lessee, instead of maintaining that potential, was destroying it.

Plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.